CHELENTIS *v.* LUCKENBACH STEAMSHIP COM-
PANY, INCORPORATED.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
SECOND CIRCUIT.

No. 657.  Argued April 18, 1918.—Decided June 3, 1918.

By the general maritime law, the vessel owner is liable only for the maintenance, cure and wages of a seaman injured in the service of his ship, by the negligence of a member of the crew, whether

a superior officer or not; and this liability is not subject to be enlarged to full common-law indemnity by the law of a State. *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205. So *held,* in a case brought in a state court of New York, and removed to the District Court, to recover full common-law damages from a Delaware owner for injuries received at sea on a voyage to New York.

Section 20 of the Seamen's Act of March 4, 1915, c. 153, 38 Stat. 1185, declaring "seamen having command shall not be held to be fellow-servants with those under their authority," was not intended to substitute the common-law measure of liability for the maritime rule in such cases.

The Judiciary Act of 1789, § 9, giving exclusive original admiralty and maritime jurisdiction to the District Courts, saves "to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." *Held,* that this, recognizing the fundamental distinction between rights and remedies, allows a right sanctioned by maritime law to be enforced through an appropriate common-law remedy, but does not give a plaintiff his election to have the defendant's liability measured by common-law standards instead of those prescribed by the maritime law.

243 Fed. Rep. 536, affirmed.

THE case is stated in the opinion.

*Mr. Silas B. Axtell,* with whom *Mr. Arthur L. Burchell* was on the brief, for petitioner:

All decisions concede to the common-law courts the right to apply their own remedies in accordance with the provisions of the saving clause in § 9 of the Judiciary Act of 1789. As concurrent remedies existed at common law and under the maritime law in such cases, a suitor always enjoyed the right to determine which remedy should be pursued. *Leon* v. *Galceran,* 11 Wall. 185 (an action for wages); *Schoonmaker* v. *Gilmore,* 102 U. S. 118 (a collision case); *Chappell* v. *Bradshaw,* 128 U. S. 132 (damages by fire caused by negligence); *Knapp* v. *McCaffrey,* 177 U. S. 638 (lien for towage); *Kalleck* v. *Deering,* 161 Massachusetts, 469 (personal injuries to a seaman, opinion per Mr. Justice Holmes).

The concurrent jurisdiction of the two systems of law arises from the saving clause and it has been held many times that the only remedy which the common law is not competent to give under that section is the right to an action *in rem* in a maritime matter. Of those cases the admiralty courts have unquestioned and exclusive jurisdiction. *McDonald* v. *Mallory,* 77 N. Y. 546; *The Hamilton,* 207 U. S. 398; *Rounds* v. *Cloverport Foundry,* 237 U. S. 301; *The Hine* v. *Trevor,* 4 Wall. 555. In saving the common law Congress intended to save the common law of the States, there being no United States common law. *Wheaton* v. *Peters,* 8 Pet. 591–657; *Western Union Telegraph Co.* v. *Call Publishing Co.,* 181 U. S. 92–101. This intention was crystallized by § 721, Rev. Stats. Congress intended to supplement the very limited law of the sea by saving rights at common law. See *The Moses Taylor,* 4 Wall. 411; *Waring* v. *Clarke,* 5 How. 440, 460–461; *American Steamboat Co.* v. *Chase,* 16 Wall. 522, 530, 532, 534; *Atlee* v. *Packet Co.,* 21 Wall. 389, 395.

*Southern Pacific Co.* v. *Jensen,* 244 U. S. 205; and *Schwede* v. *Zenith S. S. Co.,* 244 U. S. 646, show clearly that there are two jurisdictions, each independent of the other and each working out its own body of law according to its own ideas. A few illustrations will serve to show the application of different law upon the same facts in these two courts. *Erie R. R. Co.* v. *Erie Transportation Co.,* 204 U. S. 220; *Belden* v. *Chase,* 150 U. S. 674; *Workman* v. *New York City,* 179 U. S. 552; *The China,* 7 Wall. 53; *Homer Ramsdell Co.* v. *Compagnie Générale, etc.,* 182 U. S. 406; *Quebec S. S. Co.* v. *Merchant,* 133 U. S. 375; *The Osceola,* 189 U. S. 158. In England the courts of common law apply common-law principles (*Hedley* v. *Pinkney,* [1894] A. C. 222); also in Ireland (*Ramsay* v. *Quinn,* Ir. Rep. 8 C. L. 322), and in Scotland (*Leddy* v. *Gibson,* 11 Ct. Sess. Cas., 3d series, 304).

The liability of the master to the servant is a liability

imposed by law and is not a matter of contract. The contract fixes the relation of the parties, the law does the rest. *The John G. Stevens,* 170 U. S. 113; *Knapp* v. *McCaffrey,* 177 U. S. 638; *Martin* v. *Pittsburgh Ry. Co.,* 203 U. S. 284; *Keithley* v. *Northern Pacific S. S. Co.,* 232 Fed. Rep. 255, 259; *Swayne & Hoyt* v. *Barsch,* 226 Fed. Rep. 581, 590; *The Quickstep,* 9 Wall. 665, 670.

The principles here contended for do not tend to destroy the uniformity of the admiralty law. When Congress left open the common law over torts committed at sea it must have contemplated just such a case as this. If it had been essential that the admiralty jurisdiction be made exclusive, we believe that Congress could, without offense to constitutional provisions, have made it so. If at any time it should develop that greater uniformity is needed, the power always rests with Congress to attain that end by appropriate legislation, as in the analogous situation covered by the Federal Employers' Liability Act.

Admiralty courts often follow the common law, for the reason that the law of admiralty, being, as it is, a collection of a few rules and customs of the sea which are grossly inadequate to cover its needs, literally borrowed common-law principles. Common-law courts on the other hand never administer the admiralty law. In a common-law action on a maritime contract, as where a seaman sues for damages for failure of the ship owner to supply him with treatment for injuries, the contract is interpreted in the light of admiralty law but that law is not the basis of recovery. *Harden* v. *Gordon,* 2 Mason, 541; *Holt* v. *Cummings,* 102 Pa. St. 212. When, however, a case arises in a common-law court where the relief demanded cannot be sustained on some principle known to the common law, the court will refuse to act. Unless such a principle can be applied, the remedy asked for is not a remedy which the common law is competent to

give. See, e. g., *Lipson* v. *Harrison*, Q. B., 1854, 24 Eng. L. & Eq. 208; *Merritt* v. *Tice*, 77 App. Div. 326.

Section 20 of the Seamen's Act of 1915 removed the only obstacle to recovery in a common-law action by abolishing the fellow-servant rule.

The same is true of its effect upon the maritime law, for there also it was the fellow-servant rule alone which prevented recovery by a seaman from the owner on account of personal injuries received in his work and not due to unseaworthiness of the ship. Save for this rule, it is incorrect to say that in maritime law recovery was limited to maintenance and cure. Those were independent contractual rights, really part of the seaman's wages (*Harden* v. *Gordon*, 2 Mason, 541). There is nothing in the maritime law which makes them exclusive of other claims.

The admiralty courts have followed the courts of common law, and the reason why the ship owner is liable only for failure to supply a seaworthy ship is that, under that law, unamended, all on board a ship are fellow servants, and if the ship be seaworthy, then, obviously, any injury which occurred would have to be caused by either the negligence of the injured person or one of his fellow servants, and, therefore, there could be no recovery. If, on the other hand, the ship were unseaworthy and a seaman were injured because of it, he was allowed to recover damages upon the theory that the ship owner had failed to supply him with a reasonably safe place in which to work, that expression being synonymous with "seaworthy vessel." The matters decided in *The Osceola*, 189 U. S. 158, are not inconsistent with this view. The court was not promulgating any new rules in that case, and an examination of the decisions upon which it based its rulings will show them all founded on the fellow-servant doctrine. See also *The Queen*, 40 Fed. Rep. 694, 697; *The Sachem*, 42 Fed. Rep. 66; *The Bolivia*, 59 Fed. Rep. 626, 628; *The Miami*, 93 Fed. Rep. 218; *The Egyptian Monarch*,

36 Fed. Rep. 773; *The New York,* 204 Fed. Rep. 765; *The Nyack,* 199 Fed. Rep. 383; *The Buffalo,* 154 Fed. Rep. 815; *Bettis* v. *Leyland,* 153 Fed. Rep. 571; *Matter of Tonawanda Iron & Steel Co.,* 234 Fed. Rep. 198.

After a careful review of all the cases reported involving torts occurring on shipboard, we find that, with the exception of the case at bar and *Cornell Steamboat Co.* v. *Fallon,* 179 Fed. Rep. 293, where the opinion was by the same judge, both state and federal courts have considered the common-law principles which determine liability as between master and servant on land to be the principles which determine liability as between seaman and owner on board ship.

*Mr. Peter S. Carter,* for respondent, submitted.

On the evidence the trial court was, as a matter of law, justified in finding that the respondent was free from negligence, dismissing the complaint and directing a verdict in favor of the respondent.

Even if it had been shown by the testimony of the petitioner that the respondent was liable for the acts of the officer, the respondent still would not have been liable for the petitioner's injuries beyond his maintenance and cure, within the law established by the following decisions: *Globe S. S. Co.* v. *Moss,* 245 Fed. Rep. 54, 60; *The Bouker No. 2,* 241 Fed. Rep. 831; *The Osceola,* 189 U. S. 158; *The Bunker Hill,* 198 Fed. Rep. 587, 588, 591; *Cornell Steamboat Co.* v. *Fallon,* 179 Fed. Rep. 293–295; *The P. P. Miller,* 180 Fed. Rep. 288, 290; *The Nyack,* 199 Fed. Rep. 383, 389, 390; *Wilson* v. *Manhattan Canning Co.,* 205 Fed. Rep. 996. As no claim is made in the case under review for maintenance and cure, and as the petitioner stands upon his common-law rights, he cannot recover any damages from the respondent where his injuries are caused by his fault.

As a matter of law the trial court was justified in finding,

on the evidence, that the petitioner was guilty of contributory negligence. Petitioner relies on § 20 of the Seamen's Act of 1915, claiming that it applies to subordinate officers, as well as the master and chief engineer, of a vessel, as to negligence in the performance of their duties, and relieves the seaman (the petitioner) from his acts of contributory negligence. We maintain that the section was passed to put at rest all uncertainty as to whether the master of the vessel or those as high in command as the master—the chief engineer—were fellow servants with the seamen under them, as that question of law was left open in the case of *The Osceola*, 189 U. S. 158, and the case of *The Hamilton*, 207 U. S. 406. In the admiralty contributory negligence of a seaman does not bar his his right to recover; but the case under review is a common-law action, and in the common law contributory negligence, however slight, bars the right to recover.

As a matter of law the trial court was justified in finding that the petitioner assumed the risk.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

In December, 1915, petitioner was employed by respondent, a Delaware corporation, as fireman on board the steamship "J. L. Luckenbach" which it then operated and controlled. While at sea, twenty-four hours out from New York, the port of destination, petitioner undertook to perform certain duties on deck during a heavy wind; a wave came aboard, knocked him down and broke his leg. He received due care immediately; when the vessel arrived at destination he was taken to the marine hospital where he remained for three months; during that time it became necessary to amputate his leg. After discharge from the hospital, claiming that his injuries resulted from the negligence and an improvident order of a superior

officer, he instituted a common law action in Supreme Court, New York County, demanding full indemnity for damage sustained. The cause was removed to the United States District Court because of diverse citizenship. Counsel did not question seaworthiness of ship or her appliances and announced that no claim was made for maintenance, cure, or wages. At conclusion of plaintiff's evidence the court directed verdict for respondent, and judgment thereon was affirmed by the Circuit Court of Appeals. 243 Fed. Rep. 536. The latter court said:

"The contract of a seaman is maritime and has written into it those peculiar features of the maritime law that were considered in the case of *The Osceola* [189 U. S. 158]; and although, because of these peculiarities, such contracts are almost invariably litigated in admiralty courts, still the contract must be the same in every court, maritime or common law. The only difference between a proceeding in one court or the other would be that the remedy would be regulated by the lex fori. If a seaman who had been locked up or put in irons for disobedience of orders were to sue the master for damages in a court of common law, he could not recover like a shore servant, such as a cook or chauffeur, who had received the same treatment. So a seaman bringing suit in a common law court for personal injuries could recover, even if guilty of contributory negligence, although a shore servant suing in the same court could not; and a seaman suing in a common law court for personal injuries could recover (except in the case of unseaworthiness of the vessel or failure to give proper care and medical attention) only wages to the end of the voyage and the expenses for maintenance and cure for a reasonable time thereafter, whereas in a similar case a shore servant would be entitled to recover full indemnity. Therefore, by virtue of the inherent nature of the seaman's contract, the defendant's negligence and the plaintiff's contributory negligence were totally immaterial

considerations in this case; the sole question for the jury to determine being whether the plaintiff was entitled to recover because he had not received from the defendant his wages to the end of the voyage and the expense for his maintenance and cure for a reasonable time thereafter.

"Has Congress changed the situation by section 20 of the Seamen's Act [c. 153, 38 Stat. 1164, 1185] as the plaintiff contends?  He argues that the act makes the master a fellow servant of the seaman and therefore that Congress intended to make the relation between the seaman and all the officers throughout the same as at common law.  But the Supreme Court, in the case of *The Osceola, supra,* while reserving the question whether the master and seaman were fellow servants, held that it made no difference whatever in respect to the liability of the shipowners for an improvident order of the master which resulted in personal injuries to the seaman. . . .

"It follows that whether the master and seaman are fellow servants or not is quite immaterial in the case of a suit for injuries resulting from an improvident order of the master.  For this reason the court was right in directing a verdict for the defendant and the judgment is affirmed."

In *The Osceola,* 189 U. S. 158, 175, a libel *in rem* to recover damages for personal injuries to a seaman while on board and alleged to have resulted from the master's negligence, speaking through Mr. Justice Brown we held:

"1. That the vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued.

"2. That the vessel and her owner are both by English and American law, liable to an indemnity for injuries

received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship. *Scarff* v. *Metcalf*, 107 N. Y. 211.

"3. That all the members of the crew, except perhaps the master, are, as between themselves, fellow servants, and hence seamen cannot recover for injuries sustained through the negligence of another member of the crew beyond the expense of their maintenance and cure.

"4. That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident."

After reference to Article 1, § 8, and Article 3, § 2, of the Constitution, we declared in *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, 215, 216: "Considering our former opinions, it must now be accepted as settled doctrine that in consequence of these provisions Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country. . . . And further, that in the absence of some controlling statute the general maritime law as accepted by the federal courts constitutes part of our national law applicable to matters within the admiralty and maritime jurisdiction." Concerning extent to which the general maritime law may be changed, modified or affected by state legislation this was said: "No such legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony. and uniformity of that law in its international and interstate relations. This limitation, at the least, is essential to the effective operation of the fundamental purposes for which such

law was incorporated into our national laws by the Constitution itself. These purposes are forcefully indicated in the foregoing quotations from *The Lottawanna*" (21 Wall. 558, 575). Among such quotations is the following: "One thing, however, is unquestionable; the Constitution must have referred to a system of law coextensive with, and operating uniformly in, the whole country. It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign states."

The work about which petitioner was engaged is maritime in its nature; his employment was a maritime contract; the injuries received were likewise maritime and the parties' rights and liabilities were matters clearly within the admiralty jurisdiction. *Atlantic Transportation Co.* v. *Imbrovek*, 234 U. S. 52, 59, 60. And unless in some way there was imposed upon the owners a liability different from that prescribed by maritime law, petitioner could properly demand only wages, maintenance and cure. Under the doctrine approved in *Southern Pacific Co.* v. *Jensen*, no State has power to abolish the well recognized maritime rule concerning measure of recovery and substitute therefor the full indemnity rule of the common law. Such a substitution would distinctly and definitely change or add to the settled maritime law; and it would be destructive of the "uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign states."

Two acts of Congress are relied upon, and it is said that under each petitioner has the right to recover full indem-

nity according to the common law.  They are: (1) Section 9, Judiciary Act of 1789, 1 Stat. 76, 77, whereby District Courts of the United States were given exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it" (Judicial Code, §§ 24, 256); and (2) section 20 of Act to Promote the Welfare of American Seamen, approved March 4, 1915, c. 153, 38 Stat. 1164, 1185, which provides—"That in any suit to recover damages for any injury sustained on board vessel or in its service seamen having command shall not be held to be fellow-servants with those under their authority."

The precise effect of the quoted clause of the original Judiciary Act has not been delimited by this court and different views have been entertained concerning it.  In *Southern Pacific Co.* v. *Jensen* we definitely ruled that it gave no authority to the several States to enact legislation which would work "material prejudice to the characteristic features of the general maritime law or interfere with the proper harmony and uniformity of that law in its international and interstate relations."  In *The Moses Taylor*, 4 Wall. 411, 431, we said: "That clause only saves to suitors 'the right of a common-law remedy, where the common law is competent to give it.'  It is not a remedy in the common-law courts which is saved, but a common-law remedy.  A proceeding *in rem*, as used in the admiralty courts, is not a remedy afforded by the common law; it is a proceeding under the civil law."  And in *Knapp, Stout & Co.* v. *McCaffrey*, 177 U. S. 638, 644, 648: "Some of the cases already cited recognize the distinction between a common law action and a common law remedy.  Thus in *The Moses Taylor*,  .  .  . it is said of the saving clause of the Judiciary Act: 'It is not a remedy in the common law courts which is saved, but a

common law remedy.'" "If the suit be *in personam*
against an individual defendant, with an auxiliary attach-
ment against a particular thing, or against the property
of the defendant in general, it is essentially a proceeding
according to the course of the common law, and within
the saving clause of the statute . . . of a common
law remedy. The suit in this case being one in equity to
enforce a common law remedy, the state courts were
correct in assuming jurisdiction."

The distinction between rights and remedies is funda-
mental. A right is a well founded or acknowledged claim;
a remedy is the means employed to enforce a right or
redress an injury. Bouvier's Law Dictionary. Plainly,
we think, under the saving clause a right sanctioned by
the maritime law may be enforced through any appro-
priate remedy recognized at common law; but we find
nothing therein which reveals an intention to give the
complaining party an election to determine whether the
defendant's liability shall be measured by common-law
standards rather than those of the maritime law. Under
the circumstances here presented, without regard to the
court where he might ask relief, petitioner's rights were
those recognized by the law of the sea.

Section 20 of the Seamen's Act declares "seamen hav-
ing command shall not be held to be fellow-servants with
those under their authority," and full effect must be
given this whenever the relationship between such parties
becomes important. But the maritime law imposes upon
a shipowner liability to a member of the crew injured at
sea by reason of another member's negligence without
regard to their relationship; it was of no consequence
therefore to petitioner whether or not the alleged negligent
order came from a fellow servant; the statute is irrelevant.
The language of the section discloses no intention to
impose upon shipowners the same measure of liability for
injuries suffered by the crew while at sea as the common

law prescribes for employers in respect of their employees on shore.

The judgment of the court below is

*Affirmed.*

MR. JUSTICE HOLMES concurs in the result.

MR. JUSTICE PITNEY, MR. JUSTICE BRANDEIS and MR. JUSTICE CLARKE dissent.