Metcalfe, J.
The plaintiff below, defendant in error here, recovered a judgment against the defendant below, plaintiff in error here, for alleged negligent acts of the defendant in causing the .death of plaintiff’s decedent, Jens Anderson.
*287 Anderson was mate on the t steamship Lewis-ton, a vessel owned by the defendant company, engaged in carrying passengers and freight on the Great Lakes. The Lewiston sailed from the port *of Marquette on October 1, 1917, bound for Cleveland, with a cargo of iron ore. In a storm occurring during the voyage Anderson was washed overboard and drowned.
All grounds of negligence alleged in the petition were eliminated from the case during the trial except the one charging that the death of Anderson was “caused by the defendant’s unlawful conduct and negligence, of which decedent neither knew nor had the means of knowing, in causing said steamer to clear and sail from Marquette while said steamer was unseaworthy.”
The unseaworthiness claimed was in a defective rail which gave way during the storm. The rail in question was described by the captain of the ship as an “oak rail fastened to an angle-iron Avhich runs on the top of the buhvarks with the flange in board. The oak rail is bolted through this angle-iron with three-quarter-inch bolts and screwed fast with nuts in under the angle-iron. The sections are fastened to one another by scarfs thirty-two inches long. These scarfs are bolted with two-by-two bolts right through the scarf through the plank edgewise, and at the end of each scarf there is an eight-inch spike driven to hold the end of each scarf.”
The rail was two to three inches thick and eight inches wide. During the storm a heavy wave washed over the vessel, and after it subsided the *288 rail was found to be gone and the mate had disappeared and was not seen again.
The rail was put in by the Buffalo Dry Dock Company the year before, and the ship had been inspected by Government inspectors about four months before, and passed as seaworthy. There was no direct evidence showing want of ordinary care in constructing the rail, or in its inspection, and there is no evidence that the storm, though heavy, was greater than the vessel would be expected to meet and stand in an ordinary voyage. It was not unprecedented, so that the question here presented is, is the breaking of the rail, if unexplained, sufficient proof of unseaworthiness to entitle plaintiff to recover, provided, of course, that isuch unseaworthiness was the proximate cause of the accident?
The decisions of the various courts upon the questions here considered are not altogether harmonious and we shall not attempt to discuss them at length, for -out of the great mass of authorities cited some recognized principles are fairly deducible, which are decisive of the questions before us.
First, the owner of the vessel is liable to an indemnity for injuries received by a seaman in consequence of the unseaworthiness of the ship. The Osceola, 189 U. S., 158, and Chelentis v. Luckenbach Steamship Co., 247 U. S., 372.
Second, the rule that the ship must be seaworthy-is for the protection of the seamen.
“The seaman is entitled to safe appliances.” Corrado v. Pedersen, 249 Fed. Rep., 165.
“It is the duty of a shipowner, for the purposes * * * of a voyage * * * to furnish a vessel with *289 the usual and necessary appliances in such condition and repair as reasonably to attain the objects intended; in a 'word, the vessel as an entirety must be seaworthy; and the owner’s duty in this •behalf is positive and n on-assignable.” Warrington, J., in Thompson Towing & Wrecking Association v. McGregor, 207 Fed. Rep., 209-211.
Third, no exact definition of unseaworthiness can be made; but as applicable to the instant case it may be said to mean failure of the owner of the vessel to use ordinary care in the construction or care of the rail in question, so as to render it of a degree of efficiency required for the purpose for which it was designed under ordinary circumstances.
Fourth, whether or not ordinary care was used was a question for the jury.
Fifth, the fact that the rail broke under the impact of the wave under the circumstances calls for an explanation on the part of the owners of the vessel, and whether that explanation was sufficient to relieve them was a question for the jury. The Globe Steamship Co. v. Moss, 245 Fed. Rep., 54; Corrado v. Pedersen, 249 Fed. Rep., 165; The Schooner Robert Lewers Co. v. Kekauoha, 114 Fed. Rep. 849, and The Yoxford, 33 Fed. Rep., 521.
It is needless to bring into requisition the somewhat overworked doctrine of res ipsa loquitur in ■support of the last proposition. In the face of the fact that the rail did not answer the purpose for which it was constructed, that it broke under a test which it was required to withstand, it would be putting an altogether onerous burden on the *290 plaintiff to require him to go further and show that some workman of the Buffalo Dry Dock Company the year before had failed to do his duty, or that some seaman had not properly cared for the frail. These facts were not within the knowledge of the plaintiff, but if they existed should have been within the knowledge of the defendant. It was the duty of the defendant to its seamen to ■make the ship seaworthy. If, as a matter of fact, ■it was not seaworthy, the defendant was the only one who could explain that fact. Admitting the presumption of seaworthiness when the vessel sailed, that presumption must fall when the fact appears otherwise.
If our statement of the law is correct, was the plaintiff entitled to recover? To entitle her to a recovery the jury were required to find that the evidence offered in explanation of the broken rail was insufficient; that is, such evidence was not at least equal in weight to the evidential value of the fact itself (Klunk v. Hocking Valley Ry. Co., 74 Ohio St., 125), and .to find by a preponderance of the evidence that the breaking of the rail was the proximate cause of the accident.
Can this court say that the finding of the jury on these questions was clearly and manifestly against the weight of the evidence? The testimony is to the effect that the rail was renewed in the ■usual way about a year before; that it had been eared for in the usual way; that it was inspected by Government inspectors and passed as seaworthy. The witness McQuain testifies that on the morning of the accident the captain ordered him to go below and get some wedges to be used in *291 fastening down some of the hatches. When he came up with the wedges, to quote his own language, “I see somebody lying along the rail and then there was another sea boarded her and after she cleared up I didn’t see anybody.” The witness McGovern says that he and Anderson were fixing number six hatch at the time the waves struck the ship, and adds, “I see a big wave coming and I started on the run and jumped on a lifeboat. The sea filled her up and swept right over her and as soon as I got on top I looked aft to see where he he was and I didn’t see him.”
The testimony of Captain Nelson and other witnesses is not materially different and they all concur that after the heavy wave had struck the ship Anderson had disappeared and the rail was gone. No witness other than McQuain testified to seeing any one lying by the rail, and his testimony may be somewhat discredited on that point, but the concurrence of all the witnesses as to the disappearance of Anderson and the breaking of the rail occurring about the same time must have led the jury to connect the two facts as cause and effect, and we do not feel that we are justified in saying that they were wrong. The rail broke and contemporaneously with that fact Anderson disap-' peared.
The charge of the trial court is excepted to and our attention is called to the following language as especially objectionable:
“In this connection I say to you that the breaking of the rail in question and the circumstances under which it occurred, is some evidence tending to prove that the defendant was negligent *292 in the respects that I have stated and submitted to you. It is for you to determine how much, if any, weight such evidence is entitled to.”
It is objected to this language that the effect was to indicate to the jury that the rail was insecure and that the defendant had failed to use ordinary care to provide a secure rail.
We do not think that that is the effect of the language used. The trial judge might well have said to the jury that the breaking of the fail, if unexplained, was sufficient proof of unseaworthiness. Instead of that, however, he left it to the jury to determine the weight and effect of that evidence. The charge properly placed the burden of proof on the plaintiff and left it to the jury to determine the weight and effect of the evidence. This could not have been prejudicial to defendant, and the judgment is affirmed.

Judgment affirmed.

Farr and Pollock, JJ., concur.
Judges of the Seventh Appellate District, sitting ■in place of Judges Dunlap, Vickery and Wash-burn, of the Eighth Appellate District.