### BANKS v. HERBERT MAY CO., Inc.

(Circuit Court of Appeals, Fifth Circuit. April 9, 1924.)

No. 4300.

1. Seamen ⬅29(3)—When shipowner not liable for negligence of master, causing injury to seaman, stated.

Shipowner would not be responsible for negligence of master, causing injury to mate, in matters of navigation, or except in matters in which he represented owner, and which were nondelegable.

2. Seamen ⬅29(5)—Burden of proving unseaworthiness of vessel held on injured seaman.

On libel of vessel for injuries to mate, on theory that injuries resulted from unseaworthiness of vessel, due to lack of proper running equipment, burden of proving lack of such equipment was on libelant.

3. Seamen ⬅29(5)—Evidence held insufficient to sustain burden on libelant to prove lack of proper equipment.

On libel of vessel for injuries to mate, on theory that injuries resulted from ship's failure to be properly equipped with rope sufficient to repair mizzen peak halyard, evidence held insufficient to prove lack of proper equipment.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Libel by James S. Banks against the Herbert May Company, Inc. Libel dismissed, and libelant appeals. Affirmed.

Van Buren Harris, of New Orleans, La., for appellant.

Henry P. Dart, Jr., of New Orleans, La. (Dart, Kernan & Dart, all of New Orleans, La., on the brief), for appellee.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This is an appeal from a decree of the District Court, dismissing a libel filed by the appellant to recover damages for a personal injury received by him while employed by the ap-

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pellee. The appellant was employed as mate of the Herbert May, a three-masted schooner. He shipped at Texas City for a voyage to Puerto Padre on the north coast of Cuba. The ship left Texas City for that destination with a cargo of lumber on October 14, 1921. The injury to appellant occurred at about 3 o'clock in the morning of November 17, 1921. The accident which resulted in the injury to appellant, occurred in this manner:

During the appellant's watch, the mizzen peak halyard parted. The mate called the master on deck. The master then directed the mate to go aloft, and secure the ends of the broken halyard, and then repair it. The mate went aloft, and whilst standing in the rigging was struck across the eyes by the topping lift of the main boom, caused by the bellying of the main sail, due to the rolling of the ship. The topping lift of the main boom did not break. Appellant claims permanent impairment of the vision of one of his eyes, due to the blow of the rope across his eyes. After the ship had left Texas City but a few days, the mizzen peak halyard that was then on her broke, and was replaced by a new rope 2½ inches in circumference, according to the claim of appellant. The original mizzen peak halyard was a rope of 4½ inches in circumference, as claimed by appellant. The appellant himself selected the 2½-inch rope that was used to replace the original mizzen peak halyard. He, however, claimed that there was no rope, suitable for halyards, in the ship's stores, of a greater size. He also claimed that a 2½-inch rope was insufficient in size and in strength, to do the work, and that the ship was unseaworthy, because it left Texas City without a supply of suitable rope for halyards in its stores.

[1] In the District Court libelant made various complaints of negligence against the master of the ship. In this court his counsel placed reliance altogether upon the alleged unseaworthiness of the vessel because of the absence of proper running gear from her stores. Appellee would not in any event be responsible for the negligence of the master in matters of navigation, or except in matters in which he represented the owners, and which were nondelegable. Chelentis v. Luckenbach Steamship Co., 247 U. S. 372, 38 Sup. Ct. 501, 62 L. Ed. 1171; The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760.

[2] The only issue presented here for decision is whether appellant's injury was caused by the unseaworthiness of the Herbert May in leaving Texas City without a proper supply of running gear in its stores. This involves the question of fact as to whether or not it had in its stores sufficient and proper running gear, and the question of law as to whether the replacing of the mizzen peak halyard with an insufficient rope in size and strength was the proximate and legal cause of appellant's injury. The burden was on appellant to show by a preponderance of the credible evidence that the proper and necessary equipment was absent. If there was a failure to sustain the burden in this respect, then it is unnecessary for us to determine the question of law.

[3] We think the record shows that the appellant has not sustained the burden resting upon him upon the question of fact. The evidence tends to show that a rope of at least 3½ inches in circumference was required to sustain the strain put upon the mizzen peak halyard, If

there was no rope in the ship's stores of a greater circumference than
2½ inches at the time of the first breaking of the mizzen peak halyard,
the ship was without proper equipment, and the appellant would be
excused for using the smaller rope, since, in that event, there was none
other to select. The question of fact is resolved into whether there
was rope in the ship's stores, at the time the mizzen peak halyard was
first broken and replaced, suitable for halyards and of a dimension of
3½ inches in circumference or more.

The appellant denied the presence of any such rope. His witness,
Frank Marco, a seaman on the Herbert May, did not testify as to what
size rope the ship's stores contained. Appellant's witness, James Buf-
fet, who became master of the ship at Manzanillo, Cuba, at which port
the Herbert May put in, in distress, testified that there was on board
the ship, when he went on board it, at Manzanillo, 40 fathoms of 4-
inch rope. He also testified that he was informed that this rope was
put on the ship after its arrival at Manzanillo. Of this he did not
claim to have any personal knowledge.

In this state of the record, appellant's contention as to the funda-
mental fact is supported only by his own testimony. As against his
testimony the appellee introduced the testimony of Ewing, the master
who made the voyage, to the effect that there was 3½-inch rope on
board, as well as 40 fathoms of 4-inch rope, and that the 3½-inch rope
was suitable for replacing the broken halyard. Robert Ferguson, a
former master on the Herbert May, testified that at Havana, in the
spring of 1921, 120 fathoms of 4-inch rope was put aboard the ship,
and that in July, 1921, 120 fathoms of 4-inch rope was placed in the
ship's stores at New Orleans. A receipted bill for 200 fathoms of
4-inch rope, sold to the Herbert May, by Woodward, Wight & Co., of
New Orleans, identified and approved by Ferguson, dated in July, 1921,
was also introduced in evidence. In addition, there was the testimony
of T. J. Collins, Roland Linfield, and W. R. Lilly, ship surveyors, and
their certificates, as to the seaworthiness of the Herbert May and of
her equipment.

Without entering into further detail in regard to the voluminous evi-
dence contained in the record, we think the District Court correctly
ruled that the libelant had not sustained the burden resting upon him,
and in, for that reason, dismissing the libel, and the decree of the Dis-
trict Court dismissing the libel is affirmed.