[No. 25716.   Department One.   November 29, 1935.]

TONY NOVAK *et al., Respondents,* v. FISHERMEN'S PACK-
ING CORPORATION, *Appellant.*[1]

*Bogle, Bogle & Gates* and *Claude E. Wakefield,* for appellant.

*F. A. Latcham* and *Owen P. Hughes,* for respondents.

[1]Reported in 52 P. (2d) 336.

TOLMAN, J.—This is an action for damages growing out of a collision between two vessels in navigable waters. The case was tried to a jury. At the close of the plaintiff's case, the trial court granted a nonsuit in favor of the defendant Fishermen's Packing Corporation. A motion for a new trial was interposed and granted. The defendant Fishermen's Packing Corporation has appealed from that order.

The question here presented is whether, under the evidence produced, the respondents, as owners of the fishing boat Victory, were guilty, as a matter of law, of such negligence as would prevent their recovery from the appellant, as the operator of the motor boat Trojan.

It appears that the appellant was the charterer and the owner *pro hac vice* of the motor boat Trojan, which was used by it as a fish buyer or tender; that, on August 20, 1933, at about 9:30 p. m., the boats then being in Puget sound in the vicinity of the San Juan islands, the fishing boat Victory, owned by respondents, loaded with fish, tied up on the port side of the Trojan to unload its fish. The vessels were about a mile off shore, and the water was choppy, making it difficult to transfer the fish.

The Victory, upon tying up to the Trojan, shut off its engine and turned off its red and green running lights. Because of the roughness of the water, and with the knowledge of all, the Trojan, with the Victory in tow and alongside, started slowly toward shore and into the bay in search of smoother water for the purpose of bettering conditions for the transfer of the fish. All of the crew of the Victory continued to engage in transferring the fish. The only lights on the Victory were a mast light and several deck lights used to facilitate the unloading of the fish, all being white lights.

After proceeding in the manner indicated for some

little time and as the boats approached toward the shore, the fishing boat Rally, coming from the port side of the Victory, attempted to pass in front of the two vessels for the purpose of reaching the starboard side of the Trojan, there to unload its fish. There was testimony from which it might be inferred that the master of the Rally believed or assumed that the two vessels were at anchor and not in motion, and that the collision occurred because of that assumption upon his part.

It seems to be admitted that the Victory is a steam vessel within the meaning of 33 U. S. C. A. 155. If so, while under way, she was required to carry a foremast light, a red light on the port side, a green light on the starboard side and a range light. 33 U. S. C. A. 172-174. While being towed, she was under way. *The Scandinavia,* 11 F. (2d) 542.

Thus it appears that, whatever the negligence of the master of the Trojan might have been, the Victory was violating the rules of navigation in not displaying running lights while being in motion. *The Scandinavia, supra.*

This subject is thoroughly discussed and considered in the case of *Puget Sound Navigation Co. v. Nelson,* 41 F. (2d) 356, by the circuit court of appeals for the ninth district. The late Judge Rudkin, speaking for the court, there said:

"On the foregoing facts the jury would be warranted in finding that both vessels were at fault, the Olympic for failure to keep a proper lookout, and the Magna for failure to display a proper signal; and in admiralty the rule is well settled that a vessel committing a breach of statutory duty must not only show that probably her fault did not contribute to the disaster, but that it could not have done so. *Belden v. Chase,* 150 U. S. 674, 699, 14 S. Ct. 264, 269, 37 L. Ed. 1218. And, while this action was tried on the

common-law side of the court, the rights and liabilities of the parties are measured by the admiralty law, and not by common-law standards. *Chelentis v. Luckenbach S. S. Co.*, 247 U. S. 372, 38 S. Ct. 501, 62 L. Ed. 1171.

"The appellant requested an instruction in conformity with the foregoing rule in admiralty, but the request was refused. On the contrary, the court instructed the jury, in effect, that, if the appellee had a proper and sufficient light aft which could be seen at a sufficient distance by a vigilant lookout on the overtaking vessel, he was entitled to recover. In other words, the court ignored the mandatory requirement of the statute in reference to the light aft, leaving the question of its sufficiency entirely to the jury, and imposed upon the appellant the burden not only of proving a breach of statutory duty on the part of the appellee, but also that such breach contributed to the disaster. The requested instruction was in accordance with the admiralty rule, and the instruction given ignored the statute and was contrary to the admiralty rule. For these errors, the judgment must be reversed."

█ Counsel for the respondents has submitted an abundance of authority to the effect that, at common law, the violation of a statute requiring the display of lights on a vehicle does not prevent recovery unless such violation of the statute was a proximate cause of the accident. These authorities but serve to make clear the difference between the common law rule and the admiralty rule. We cannot make or unmake the admiralty rule, but must accept it as laid down by the Federal courts and apply it in common law actions such as this, where the rights of the parties are to be measured by that rule. *Puget Sound Navigation Co. v. Nelson, supra.*

█ The only question which remains is: Was there evidence introduced which would warrant a jury in finding that the absence of running lights on the Victory could not have contributed to the accident?

From the case just cited and from a later decision of the same court on a second appeal, *Puget Sound Navigation Co. v. Nelson,* 59 F. (2d) 697, and, because the circuit court of appeals recognized that there was a jury question in that particular case, it seems to be argued that here, on the evidence submitted, the jury might have found that the absence of running lights could not have contributed to the accident.

We do not think so. Clearly, in the *Nelson* case, if the jury found that there was a sufficient white light clearly visible from the rear (the direction from which the colliding boat came), then they might also have found that the lack of visibility of that light from the opposite direction could not have affected the situation. Here, on the contrary, we have witnesses for the respondents who gave testimony to the effect that the master of the Rally did not appreciate the fact that the vessels were moving. The white lights, which were abundant to show the presence of the two vessels, gave no warning that they were in motion or of which way they were moving.

Therefore, to permit a jury, in the face of these facts, to say that the absence of running lights could not have contributed to the accident, would be to invite a verdict directly contrary to the only inference to be reasonably drawn from the evidence. This issue, like any other issue, should be submitted to a jury only when the evidence is such as to create a situation where reasonable minds may differ.

The trial judge was right when he directed a nonsuit.

Reversed, with directions to enter a judgment dismissing the appellant from the action.

MITCHELL, STEINERT, GERAGHTY, and BEALS, JJ., concur.