**AMERICAN DREDGING CO., Libellant,**

v.

**GULF OIL CORPORATION, Standard Oil Company, Atlantic Pipe Line Company, American Oil Company, Texas Company, Atlantic Refining Co., Pioneer Oil Company**

and

**Herman S. Stoffman and Benjamin Stoffman, Respondents.**

No. 9 of 1959.

United States District Court
E. D. Pennsylvania.
July 22, 1959.

Krusen, Evans & Shaw, Philadelphia, Pa., for libellant.

J. B. H. Carter, Philadelphia, Pa., for Gulf Oil Corp.

Thomas F. Mount, Philadelphia, Pa., for Atlantic Refining Co. and Atlantic Pipe Line Co.

Gordon Cavanaugh, Philadelphia, Pa., for Esso Standard Oil Co.

Howard R. Detweiler, Philadelphia, Pa., for Pioneer Oil Co., Herman S. Stoffman and Benjamin Stoffman.

John J. McDevitt, 3rd, Philadelphia, Pa., for American Oil Co.

William P. O'Neill, Philadelphia, Pa., for Texas Co.

HASTIE, Circuit Judge.

This libel as instituted by American Dredging Co. demands of certain riparian landowners contribution or indemnity for damages libellant has had to pay for the wrongful death of a seaman employed by it. The fatal accident occurred in Pennsylvania waters when a volatile pe-

troleum product on the surface of the Schuylkill River ignited as libellant's tug with a tow was navigating the stream. Libellant was held for the seaman's death in the ensuing fire on the theory that fumes from the oil which coated the river were ignited by an open flame kerosene lantern carried by the tow in a position which was only three feet above the surface of the river although the law required a light to be shown at an elevation of eight feet or more. Libellant alleges that respondents were at fault and should respond by way of contribution or indemnity because their negligence caused the volatile and inflammable substance to be present on the surface of the river.

The respondents have filed exceptions to the libel claiming that as a matter of law they have no duty to make libellant whole and thus that the libel does not state a cause of action.

■■ At the outset it is necessary to examine the nature of libellant's liability which respondents are being asked to share. This inquiry is answered by the opinion of the Supreme Court in Kernan v. American Dredging Co., 1958, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382, directing, contrary to the decisions of the courts below, that American Dredging Co. respond in damages for the fatal accident then and now in question. In the Kernan case all of the Justices agreed that this cause of action for the wrongful death of a seaman in navigable waters is a substantive right created solely by federal law, particularly the Jones Act, 41 Stat. 1007, 46 U.S.C.A. § 688. The majority of the Court then reasoned that it was enough to make the shipowner liable for the seaman's death that the igniting of inflammable vapor rising from the surface of the river was caused by the placement of a ship's light much closer to the water than navigation regulations permitted. It mattered not that this statutory fault was the violation of a duty imposed solely to make the light more easily seen and thus intended solely to protect against the hazards of collision. True, the scope of liability

for negligent injury, both at common law and in admiralty, is normally limited by the principle that the injured person has a cause of action only if his interest, as in fact invaded, lay within the risk of harm which in legal contemplation made the actor's conduct blameworthy. The Eugene F. Moran, 1909, 212 U.S. 466, 29 S.Ct. 339, 53 L.Ed. 600; Restatement, Torts § 286; See Seavey, Principles of Torts, 1942, 56 Harv.Law Rev. 72, 90. But it·is enough under the Jones Act that fault, whether the breach of a statutory duty or otherwise, on the part of an employer subject to the Act has caused harm to his employee. Or, as the Court put it in the Kernan case:

"The FELA [45 U.S.C.A. § 51 et seq.] and the Jones Act impose upon the employer the duty of paying damages when injury to the worker is caused, in whole or in part, by the employer's fault. This fault may consist of a breach of the duty of care, analogous but by no means identical to the general common-law duty, or of a breach of some statutory duty." 355 U.S. at page 432, 78 S.Ct. at page 398.

This rationale is spelled out because libellant argues at length that in the Kernan case the Supreme Court did not hold libellant to a tortfeasor's primary liability for harm caused by his wrong. The argument is ingenious but not sound. It is conceded that by common-law standards there was no negligence on the part of libellant. But this is true only because the accident caused was not within the risk which made libellant's conduct wrongful. The fact remains that the liability which has been imposed under the Jones Act is a liability for harm caused by the actor's wrong. In legal contemplation such an actor is held as a tortfeasor even though he has been denied the benefit of certain traditional limitations on the area and scope of liability.

It is now necessary to examine the respondents' situation in relation to the fatal injury for which libellant has had to respond in damages. This libel as-

serts, and at the present stage we must accept its assertion, that negligence of the respondents caused the dangerous accumulation of volatile and inflammable materials on the surface of the river. The great risk inherent in such a condition materialized in the fatal catastrophe which occurred here. Thus, the respondents also may be liable as tortfeasors for the fatal injury of libellant's employee.

The foregoing analysis of the nature of the claims involved is relevant to the question whether, as libellant contends, the law of Pennsylvania may and should be utilized as the source of the rights of contribution and indemnity which libellant asserts. It has already been pointed out that the obligation which libellant has satisfied and respondents are now asked to share has been defined and imposed by the Supreme Court in the Kernan case solely as a federally created right under the Jones Act. In these circumstances state law did not and could not play any part in imposing liability on libellant. By the same token attendant and incidental obligations in the nature of rights over against others are derived, if at all, from the same source. The entire complex of substantive rights thus arising in this maritime cause is a creation of national law. Compare Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Garrett v. Moore-McCormack Co., 1942, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239; Chelentis v. Luckenbach S.S. Co., 1918, 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171. Our inquiry then is whether national maritime law recognizes a right of contribution as an equitable incident of such Jones Act liability as we have here.[1]

■ As concerns the right of contribution for maritime wrongs the decisive case is Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318. There the Supreme Court reasoned that only in collision cases has the maritime law heretofore recognized a duty of contribution between parties who share legal responsibility for a maritime injury. The Court then considered whether it should feel free to fashion rules of contribution in a broader area of maritime wrongs. It was unwilling to do this because in the Jones Act, the Public Vessels Act, 46 U.S.C.A. § 781 et seq., the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., and other statutes Congress has substituted a legislative scheme of liability for judge made law over a broad area. True the Longshoremen's and Harbor Workers' Compensation Act had special bearing on that case, but the Supreme Court gave no indication that its decision was limited to cases involving that statute. Rather, it was the stated view of the Court that in this area of statutory liability for maritime torts legislative action rather than judicial imposition should determine whether the incident of contribution is to be recognized and, if so, whether equally or by degree of fault among tortfeasors responsible for an injury.

The rationale of the Halcyon case is also fatal to libellant's suggestion that it would be proper here for the admiralty court to borrow a state contribution rule from the law of Pennsylvania. The considerations which keep admiralty courts from fashioning their own rules of contribution, as applied in the Halcyon case, equally restrain admiralty from borrowing any state rule in similar circumstances. Indeed, such borrowing would be merely a particular way of doing that which the Halcyon case disapproves generally.

---

1. While our attention has been directed to wrongful death actions permitted in the admiralty forum under state wrongful death statutes, those cases are not relevant here. They involve enforcing state created rights and not the borrowing of concepts from state law in shaping substantive federal law. The Tungus v. Skovgaard, 1959, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524. It is normal that state concepts be utilized in defining state created rights but not in the defining of federal rights.

886

The libellant's claim to be indemnified by the respondents requires only brief discussion. Authoritative recent cases involving claims to be idemnified for liability imposed under the Jones Act and other maritime law consistently recognize that normally the right to indemnity depends upon the existence of a legal relationship—in most cases a contractual one—between indemnitor and indemnitee. Crumady v. The J. H. Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413; Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Hagans v. Farrell Lines, Inc., 3 Cir., 1956, 237 F.2d 477; Brown v. American-Hawaiian S.S. Co., 3 Cir., 1954, 211 F.2d 16. These cases are binding upon this court.

Here the libellant shipowner and the several respondent riparian landowners are in fact and in legal contemplation total strangers. Each has been independently at fault. The unhappy conjunction of fault on the one side in causing oil to coat the river and on the other in placing a lighted lantern very near to the water caused the accident in suit. In such circumstances the court can find no relational basis and no legal justification for imposing an indemnitor's liability on the respondents after the libellant has paid damages for injury caused by the active and concurring wrongs of libellant and respondents. Cf. Amerocean S.S. Co. v. Copp, 9 Cir., 1957, 245 F.2d 291. It is not necessary to reach the question, left open by the Supreme Court in Ryan Stevedoring Co. v. Pan-Atlantic S. S. Co., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, whether absent any relationship between those responsible for maritime torts, admiralty will employ concepts of "primary" or "active" fault as distinguished from "secondary" or "passive" fault as a basis for imposing an obligation to indemnify.[2] For here the statutory wrong of libellant and the common-law negligence of respondents were plainly concurring causes simultaneously active and effective in inflicting injury.

The exceptions to the libel will be sustained and the libel will be dismissed.

2. How in legal theory this would differ from contribution is not clear.