Russell L. KETCHUM, Plaintiff,

v.

GULF OIL CORPORATION, Travelers Insurance Company, Huthnance Drilling Company, and South State Insurance Company, Defendants-Appellants,

v.

DRESSER INDUSTRIES, INC., Defendant-Appellee.

No. 85–3305.

United States Court of Appeals, Fifth Circuit.

Aug. 25, 1986.

---

**16.** 28 U.S.C. § 2254(d) (emphasis added).

C. Gordon Starling, Jr., Gerard T. Gelpi, New Orleans, La., for defendants-appellants.

James M. Tompkins, John E. Galloway, New Orleans, La., for defendant-appellee.

Before THORNBERRY, POLITZ, and RANDALL, Circuit Judges.

POLITZ, Circuit Judge:

Before the court is an appeal of a summary judgment in favor of Dresser Industries, Inc., third-party defendant, for claims arising out of an accident on a Gulf Oil Corporation fixed platform located on the Outer Continental Shelf off the Louisiana coast. Finding no error, we affirm.

## Facts

Gulf contracted with Dresser to perform certain wireline work on its drilling platform. Russell L. Ketchum, a Dresser employee, was injured when a crane operator for Huthnance Drilling Company, the drilling contractor aboard the platform, attempted to lift the wireline spool. Dresser paid the injured Ketchum benefits under the Longshore & Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950.[1]

Ketchum filed a personal injury action against Gulf and Huthnance. Defendants filed a third-party complaint against Dresser, seeking contribution or indemnity.[2] Dresser moved for summary judgment contending that as the employer of Ketchum it was responsible only for workers' compensation benefits, being insulated from further liability by the exclusivity provision of the LHWCA, 33 U.S.C. § 905(a).[3] The district court initially rejected this motion but at trial, after plaintiff's opening statement, reversed its prior ruling and granted summary judgment dismissing the third-party complaint.

Upon conclusion of the trial, the jury returned a verdict against Gulf and Huthnance, apportioning liability 25% to the former and 75% to the latter. The trial court then ordered remittitur, or, alternatively, a new trial. Ketchum opted for a new trial limited to quantum. After the second trial ended in a mistrial, plaintiff and defendants reached a settlement. Defendants reserved their rights against Dresser and timely appealed the summary judgment rejecting their indemnity and contribution claims.

## Analysis

Summary judgment is appropriate when the litigation involves only a question of

---

1. This case is governed by the LHWCA, as directed by the provision of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(b), extending the protections of the LHWCA to employees injured on fixed platforms on the Outer Continental Shelf.

2. Although the third-party complaint contains an allegation of a quasi-contractual relationship between Dresser and third-party plaintiffs, this matter has proceeded solely on the basis that the indemnity and contribution claims were grounded in tort. In this appeal we consider only whether the LHWCA bars a third-party,

nonvessel-owner's claim for tort contribution or indemnity.

3. Section 905(a) provides:

The liability of an employer prescribed in section 904 of this title [the workers' compensation section] shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, ... next of kin, and anyone otherwise entitled to recover damages from such employer ... on account of such injury or death.

law and no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir.1986). That is a precise reflection of the situation presented by this appeal. This case poses only a legal question, which synthesizes to an inquiry whether this circuit's firmly established precedents have been impliedly overruled by *dicta* in *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983). Appellants so maintain. The gist of their argument is that under an analogical application of certain Lockheed *dictum*,[4] § 905(a) does not bar a nonvessel, third-party tort action for contribution against the LHWCA employer, thereby requiring reversal of this circuit's longstanding rule.

The course appellants would have us now track is contrary to the blazed pathway traveled in this and at least two other circuits. Since 1967 it has been the position of this court that the LHWCA's "exclusive liability provision effectively abrogates any independent tort liability of the employer to its employees, thereby eliminating any basis which may have existed for indemnification [of the third-party plaintiff] on a tort theory." *Ocean Drilling & Exploration Co. v. Berry Bros. Oilfield Serv., Inc.*, 377 F.2d 511, 514 (5th Cir.), *cert. denied*, 389 U.S. 849, 88 S.Ct. 102, 19 L.Ed.2d 118 (1967) ("*ODECO*"). The *ODECO* rule has been consistently followed. *See, e.g., Foreman v. Exxon Corp.*, 770 F.2d 490 (5th Cir.1985); *Peters v. North River Ins. Co.*,

764 F.2d 306, 310 (5th Cir.1985) ("The [LHWCA] ... den[ies] third parties a right of contribution or indemnity from the employer even when the employer is at fault"); *White v. Texas Eastern Transmission Corp.*, 512 F.2d 486, 489 (5th Cir. 1975) ("It is clear beyond doubt under *ODECO* that § 905 of [the LHWCA] has extinguished [an employer's tort] liability in favor of a compensation scheme. Thus, there remains no underlying tort liability to support [the third-party plaintiff's] indemnity claim"), *cert. denied sub nom. Bettis Corp. v. Charles Wheatley Co.*, 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976).[5]

The First and Second Circuits have likewise interpreted § 905(a). *See, e.g., Drake v. Raymark Indus., Inc.*, 772 F.2d 1007 (1st Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986); *Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714, 717 (2d Cir.1978) (Friendly, J.) (stating that § 905(a) "immunizes a compensation-paying employer from third party claims for contribution"); *Lopez v. Oldendorf*, 545 F.2d 836, 839–40 (2d Cir.1976), *cert. denied*, 431 U.S. 938, 97 S.Ct. 2650, 53 L.Ed.2d 256 (1977) ("Inasmuch as [the LHWCA employer] furnished its employee Lopez with the benefits required by the [LHWCA], it is not subject to a claim for contribution"); *American Mut. Liability Ins. Co. v. Matthews*, 182 F.2d 322, 325 (2d Cir.1950) (L. Hand, J., concurring).

---

4. In *Lockheed,* which involved the Federal Employees' Compensation Act, 5 U.S.C. §§ 8116 *et seq.*, the majority opinion referred to § 905(a) of the LHWCA as a model for the "exclusive-liability provision" of the FECA. 460 U.S. at 194 n. 4, 103 S.Ct. at 1036 n. 4.

5. Appellants cite decisions of this court which do not call into question the *ODECO* doctrine. At first blush, *Tran v. Manitowoc Eng'g Co.*, 767 F.2d 223 (5th Cir.1985), might appear to lend support to appellants' claim. But *Tran* is factually and legally distinguishable. It does not involve § 905(a) but, rather, the *CAPTAIN FRED* doctrine, *Smith v. M/V CAPTAIN FRED*, 546 F.2d 119 (5th Cir.1977), which permits a third-party action for contribution where the LHWCA employer is also a vessel owner and hence liable for a maritime tort under § 905(b). Where a tort action lies against the LHWCA employer as

vessel owner, there is a basis for third-party contribution. That is not the factual pattern before us today.

Appellants also invite our attention to *Pippen v. Shell Oil Co.*, 661 F.2d 378 (5th Cir.1981). The relevant language in *Pippen,* an action for contractual indemnity not barred by the exclusivity provision of § 905(a) (see cases cited in *Pippen,* 661 F.2d at 386), is manifestly *obiter dictum.* In a footnote, we suggested "though we have no such situation before us here [*i.e.,* a situation involving tort contribution], some types of tort claims for indemnity would apparently not be barred by § 905(a)." *Id.* at 386–87 n. 14 (*citing Holden v. Placid Oil Co.*, 473 F.Supp. 1097 (E.D.La.1979)). We need not decide the correctness of this statement; the *Pippen/Holden* scenario is factually inapposite.

■ We are constrained to follow our dispositive precedent, notwithstanding suggestive *dictum* which might result in a different conclusion. The holding of a panel of this court must comport with prior panel decisions, until changed by this court acting *en banc,* or unless the Supreme Court either clearly holds or teaches to the contrary. The *Lockheed* decision does neither.

*Lockheed* arose out of the crash of an aircraft owned and operated by the United States Air Force which had been manufactured by Lockheed Aircraft Corporation. The survivors of a civilian employee of the government filed a products liability suit against Lockheed which sought indemnification from the United States under the Federal Tort Claims Act. The sole issue before the *Lockheed* court was whether the exclusivity provision of the Federal Employees' Compensation Act, 5 U.S.C. § 8116(c), barred Lockheed's claim for tort-based indemnification. As our colleagues in the First Circuit aptly observed in *Raymark,* 772 F.2d at 1020, the *Lockheed* holding is "carefully and precisely worded":

> The District Court held that Lockheed had a right to indemnity under the governing substantive law, but the Court of Appeals did not rule on that question. Accordingly, we do not consider it. We adhere to the decision in *Weyerhaeuser* [*S.S. Co. v. United States,* 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963) ], and hold only that FECA's exclusive-liability provision, 5 U.S.C. § 8116(c), does not directly bar a third-party indemnity action against the United States.

460 U.S. at 199, 103 S.Ct. at 1039.

*Weyerhaeuser* involved the FECA; the LHWCA was not implicated. Moreover, as above noted, a necessary prerequisite to tort contribution or indemnification is an underlying substantive tort action between the employer and the plaintiff-employee, an essential twice stressed by the *Lockheed* court. 460 U.S. at 193 n. 3 & 197 n. 8, 103 S.Ct. at 1036 n. 3 & 1038 n. 8. Parenthetically, we note that in the *Tran* case relied on by appellants such an underlying tort claim was extant.

■ Of substantial consequence, *Lockheed* teaches that a court faced with a contribution claim must initially determine whether there is an underlying basis in substantive law for a third-party indemnity action. *Raymark,* 772 F.2d at 1020. As is apparent from the litany of our decisions involving tort actions by LHWCA employees against their employers, the 1972 amendments to the LHWCA preserved only the covered employee's maritime negligence claim against the vessel owner. In that restricted setting, as the *Tran* panel observed, there is the required underlying substantive right which will underpin a tort indemnity action. But as *ODECO* and its progeny have held, since the LHWCA employee has a tort action against the statutory employer only if the employer is a vessel owner, there is no basis for a tort contribution claim against a nonvessel third party.[6]

If the foregoing were insufficient, we have a further reason for declining appellants' invitation to ignore the foregoing precedents and accept an expansive reading of the *Lockheed dicta.* *Lockheed* makes no reference to prior decisions of the Court which reflect a similar interpretation of § 905(a). In *Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), the Court explained its initial foray into the field of contribution under the LHWCA, *Halcyon Lines v. Haenn Ship Refitting Corp.,* 342

---

**6.** When the vessel owner is the defendant/third–party plaintiff, he is barred by § 905(b) from receiving contribution or an "equitable credit" against his liability to the LHWCA employee in an amount equal to that portion of the damages caused by the concurrent negligence of the statutory employer. *See* generally *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979); *Samuels v. Empresa Lineas Maritimas Argentinas,* 573 F.2d 884 (5th Cir. 1978); F. Maraist, *Admiralty in a Nutshell* 261 (1983).

U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952), stating that

> [d]espite the occasional breadth of [the *Halcyon dictum* that a right of contribution did not exist in maritime non-collision cases], our opinion in *Halcyon* should be read with [its] historical backdrop in mind. Viewed from this perspective, ... we think *Halcyon* stands for a more limited rule than the absolute bar against contribution in non-collision cases....

417 U.S. at 111, 94 S.Ct. at 2177. The Court recognized that the broad-ranging *Halcyon dictum* was limited by "the well-established maritime rule allowing contribution between joint tortfeasors," *id.* at 113, 94 S.Ct. at 2178, which in turn was limited by the exclusivity provision of the LHWCA.

The *Cooper* Court noted that it had earlier reached this same conclusion in *Atlantic Coast Line R. Co. v. Erie Lackawanna R. Co.*, 406 U.S. 340, 92 S.Ct. 1550, 32 L.Ed.2d 110 (1972), declaring: "*Atlantic* proves only that our decision in *Halcyon* was, and still is, good law on its facts." *Cooper*, 417 U.S. at 115, 94 S.Ct. at 2179. This interpretation of *Halcyon* and *Atlantic* was confirmed in *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979), where, *citing Halcyon*, the Court opined that it had "first held [in *Halcyon*] that the ship owner could not circumvent the exclusive-remedy provision [of the LHWCA] by obtaining contribution from the concurrent tortfeasor employer." *Id.* at 261, 99 S.Ct. at 2757. *See also id.* at 268, 99 S.Ct. at 2760.

In light of the foregoing, and finding ourselves in full agreement with our First Circuit colleagues that *Lockheed* "does not overrule three decades of consistent Supreme Court jurisprudence regarding the interpretation of § 905(a)," *Raymark*, 772 F.2d at 1020, or two decades of this court's precedents, we AFFIRM the district court's dismissal of the claims against Dresser.