**ST. JAMES TRANSPORTATION CO., INC. and Waterways Co. No. 7 Ltd. Corp., Appellants,**

v.

**James PORTER, Appellee.**

**No. 01–90–01142–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 17, 1992.

Rehearing Denied Oct. 22, 1992.

Roger Townsend, William J. Boyce, Ronald J. Palmer, Houston, for appellants.

John Roberson, Robert E. Lapin, H. Graham, Hill, Parker, Franklin, Cardwell & Jones, Houston, for appellee.

Before JONES, SAM BASS and PRICE,[*] JJ.

## OPINION

JONES, Justice.

This case presents the question of whether the trial court erred in directing a verdict against St. James Transportation Co. and Waterways Co. No. 7 Ltd. Corp., defendants in the trial court and appellants before this Court.

### Nature of the Case

James Porter, appellee, sued appellants for negligence under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b) (1988) (LHWCA or the Act), general maritime law, and Texas common law. The suit stemmed from a May 8, 1986, accident in which Porter injured his left foot while loading crushed stone onto barges for his employer, Dravo Basic Materials Co., Inc. (Dravo). Dravo obtained the barges from St. James under a 1982 Barging Agreement; St. James chartered the barges from the owner, Waterways. Porter settled his claim against Dravo under the Act and received a lump sum payment. Dravo was dismissed as a primary defendant prior to the settlement. Following a jury trial, the court rendered judgment for Porter against St. James and Waterways, jointly and severally, for $1,047,887.75. The trial court granted a directed verdict against St. James and Waterways (collectively referred to as St. James) on their cross-claim for contribution against Dravo.

### Points on Appeal

St. James contends that the trial court erred in granting a directed verdict to Dravo, because St. James introduced sufficient

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

evidence to raise a question of fact regarding Dravo's status as owner *pro hac vice* of the barges at the time of Porter's injury and regarding Dravo's alleged breach of its contract with St. James. St. James also asserts that the trial court erred in overruling its motion for new trial or for judgment notwithstanding the verdict, because no evidence or factually insufficient evidence supports the jury's finding that St. James' negligence proximately caused Porter's accident. Appellants also argue that the trial court erred in refusing their tendered instructions regarding the scope of a stevedore's duty to its employee longshoreman, the scope of a vessel owner's duty to a longshoreman, a principal's lack of liability for the acts or omissions of an independent contractor, and the exemption of personal injury damage awards under the LHWCA from state or federal taxation.

### Summary of Facts

Evidence adduced at trial showed that James Porter worked as a general laborer for Dravo performing stevedoring tasks at Dravo's Galena Park, Texas facility. Porter assisted in loading crushed stone onto barges in the Houston Ship Channel from a dockside conveyor belt. His tasks on the occasion in question included monitoring the level of the two barges as they were being loaded with material. This was a means of determining the amount of cargo on board. The activity required Porter to cross between the barges, which sometimes had a gap as wide as one foot between them.

At one point, while attempting to step from one barge to the other, Porter lost his footing on loose gravel that was on the deck of the barge onto which he was stepping and fell partly in between the two barges. The barges collided before Porter could pull himself out of the gap. His left leg was caught and crushed and eventually was amputated.

### Longshoremen's and Harbor Workers' Compensation Act

Porter's injury occurred on a vessel in navigable waters. Porter's statutory cause of action against St. James arose out of the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b) (1988). Under the Savings to Suitors [1] clause, federal maritime law governs whenever a maritime claim within the admiralty jurisdiction of the federal courts is filed in state court. *See, e.g., Chelentis v. Luckenback S.S. Co.*, 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918). Accordingly, state courts must apply maritime substantive law in maritime cases. *See, e.g., Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S.Ct. 406, 408–09, 3 L.Ed.2d 550 (1959), *overruled on other grounds in Moragne v. State Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

The parties do not dispute that Porter was a longshoreman entitled to sue under the Act. His cause of action arose under section 905(b), which grants longshoremen the right to sue a "vessel" for its negligence. The term "vessel" is defined in section 902(21) as:

> any vessel upon which or in connection with which any person entitled to benefits under this Act suffers injury or death arising out of or in the course of his employment, and said vessel's owner, *owner pro hac vice*, agent, operator, charter or bare boat charterer, master, officer, or crew member.

33 U.S.C. § 902(21) (1988) (emphasis added).

Section 905(b) provides immunity for employers who pay compensation benefits to their workers, as follows: "[T]he employer

---

1. The "Savings to Suitors" clause set forth in 28 U.S.C., section 1333(1) provides: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." The statute has been interpreted to allow states concurrent jurisdiction with federal courts for certain maritime personal injury claims. *Port of Houston Auth. v. Guillory*, 814 S.W.2d 119, 121 (Tex. App.—Houston [1st Dist.] 1991, writ granted); *see Madruga v. Superior Court*, 346 U.S. 556, 560–61, 74 S.Ct. 298, 300–01, 98 L.Ed. 290 (1954) (state may adjudicate maritime causes of action that are in personam).

shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void." St. James attempted to circumvent this prohibition by asserting that Dravo, in addition to being Porter's employer, was also sufficiently in control of the barge to become the owner *pro hac vice* of the vessel. In this capacity, St. James contends that Dravo could be held liable for contribution, notwithstanding the employer immunity provisions in the Act. The trial court rejected St. James' claim, ruling that the standard for *pro hac vice* status is exclusive control. The trial court found St. James failed to present any evidence that Dravo exercised exclusive control over the barge. Pursuant to this ruling, the trial court granted Dravo's motion for directed verdict and declined to submit an issue about Dravo's alleged negligence to the jury.

### The Directed Verdict

■ We apply the procedural law of Texas to review the trial court's grant of a directed verdict. *See Mitchell v. Missouri–Kansas–Texas R.R. Co.*, 786 S.W.2d 659, 661–62 (Tex.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 247, 112 L.Ed.2d 205 (1990). In reviewing the grant of a directed verdict by the trial court on an evidentiary basis, the reviewing court will determine whether there is any evidence of probative force to raise fact issues on the material questions presented. *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978). The court considers all of the evidence in a light most favorable to the party against whom the verdict was instructed and discarding all contrary evidence and inferences arising therefrom. *Collora,* 574 S.W.2d at 68; *Graziadei v. D.D.R. Machine Co.,* 740 S.W.2d 52, 55–56 (Tex.App.—Dallas 1987, writ denied). Every reasonable meaning deducible from the evidence is to be indulged in the nonmovant's favor. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 931 (Tex. 1983). If there is any conflicting evidence of probative value on any theory of recovery, an instructed verdict is improper, and the issue most go to the jury. *White v. Southwestern Bell Tel. Co.,* 651 S.W.2d 260, 262 (Tex.1983); *Jones v. Tarrant Util. Co.,* 638 S.W.2d 862, 865 (Tex.1982).

St. James maintains that Porter had a cause of action against Dravo as owner *pro hac vice* of the barge and that St. James, in turn, had a claim for contribution against Dravo. We first discuss St. James' assertion regarding *pro hac vice* ownership and examine, in the light most favorable to St. James, whether there was any probative evidence of the same offered at trial.

*Pro Hac Vice* Status

■ St. James contends that, for purposes of the LHWCA, an owner *pro hac vice* "is one who assumes by charter or otherwise 'exclusive possession, control, command and navigation' of the vessel for [a] specific period of time, has complete, though perhaps only temporary dominion over the vessel entrusted to him and commands her navigation and is entitled to avail himself fully of her services." *Helaire v. Mobil Oil Co.,* 709 F.2d 1031, 1041 n. 15 (5th Cir.1983) (quoting *Bernier v. Johns–Manville Sales Corp.,* 547 F.Supp. 389, 394 (D.Me.1982)). Dravo asserts that ownership *pro hac vice* is a narrow doctrine that has never been extended to mere bailees and has never rested on a theory of mere possession and cannot be extended to a stevedore, such as Dravo. Dravo notes that the record before this Court will yield no evidence that Dravo kept tugboats at its Galena Park facility or that Dravo was required to provide tugboats under its contract with St. James and Waterways. Dravo further contends that there is no evidence that it had either the right or the means to exercise navigational control over the St. James barges at the time of Porter's injury.

Evidence of who had exclusive control or had a right to exclusive control of the barge at the time of Porter's injury is central to our analysis. Testimony was offered to show that St. James provided the barges to Dravo pursuant to a barging agreement, in which St. James agreed to make barges available to Dravo on a per need basis. Dravo controlled loading operations on the two barges. When St. James employees were present, they took no part

in supervising or assisting the loading. Dravo cared for the barges while they sat idle between loading operations. Dravo supplied the mooring lines and gangway, inspected the barges, and put warning lights on them.

When Dravo wanted to shift the position of the barges, Dravo called a towing company or used its own tug to do so. About one month before Porter's accident, a towing company hired by Dravo positioned barge WTT 8159 next to WTT 8157, the barges involved in the accident. St. James did not play a role in supervising the operations of independent towing companies in moving or tying up the barges. This evidence raised fact issues on the question of Dravo's *pro hac vice* ownership status, which should have been presented to the jury for its consideration. *Texas Employers Ins. Ass'n v. Page*, 553 S.W.2d 98, 102 (Tex.1977).

In the present case, the trial court directed a verdict against St. James on its contribution claim, as follows:

I've listened to the motion, and I have considered it carefully, and I'm going to grant it. I don't find that from reading the memorandum of both parties that I have heard *any evidence which indicates that these people [Dravo] had exclusive control.* I think just a few days before they called and said come over here and pump these things out and fix this up, which indicated they certainly didn't claim exclusive control....

(Emphasis added.) The record before this Court does not contain the motion for directed verdict or the order of the trial court. We, therefore, conclude that the trial court directed its verdict against St James based on its finding that there was no evidence that Dravo had exclusive control.

We hold that the trial court's conclusion regarding the directed verdict was error, based on our finding of conflicting evidence of probative value on the question of Dravo's *pro hac vice* ownership status. *See Qantel Business Sys. v. Custom Controls Co.*, 761 S.W.2d 302, 303–304 (Tex.1988).

We further hold that this error probably caused rendition of an improper judgment regarding contribution or indemnity for Porter's damages. Tex.R.App.P. 81(b)(1).

Right to Contribution

■ St. James refers this Court to the case of *Terry v. Southeast Packing Co.*, 416 S.W.2d 624, 626 (Tex.Civ.App.—Houston 1967, no writ), as support for its contention that the LHWCA does not bar an employee from pursuing an injury claim against his employer-shipowner, even after he has received workers' compensation benefits. St. James asserts that, based on Porter's section 905(b) right to pursue a claim against Dravo as owner *pro hac vice* (against the "vessel"), St James is entitled to contribution from Dravo for Dravo's injury-causing negligence.

In 1972, Congress amended the LHWCA to realign the remedies of an injured longshore worker against his employer and the vessel owner.[2] Before 1972, a circular chain of liability formed when a longshore worker suffered injuries while loading or unloading a ship. The longshore worker sued for workers' compensation benefits from the employer, as well as recovery for negligence or unseaworthiness under the holding of the Supreme Court of the United States in the case of *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). The vessel owner's liability for unseaworthiness amounted to strict liability for any injury-causing condition on the vessel. *See Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 164–65, 101 S.Ct. 1614, 1620–21, 68 L.Ed.2d 1 (1980). In turn, the vessel owner that found itself strictly liable for a condition created by the stevedore sued the longshore worker's employer for breach of an express or implied warranty to handle the cargo in a reasonable and safe manner. *Id.* at 165, 101 S.Ct. at 1621; *Ryan Stevedoring Co. v. Pan–Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

The 1972 amendments altered this scheme by adding section 905(b), the provision under which Porter sued in the present

2. Pub.L. No. 92–576, 86 Stat. 1251, 1263 (1972)   (current version at 33 U.S.C. § 905(b) (1988)).

case. Section 905(b) provides that when a person sues a vessel under the LHWCA, "the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void...." 33 U.S.C. § 905(b) (1988).

St. James concludes, "in calibrating section 905(b) to address the stevedore's indemnity obligations, Congress nonetheless retained section 902(21)'s broad definition of the 'vessel' against which a section 905(b) negligence action may be maintained. Thus ... section 902(21) specifically includes an owner *pro hac vice* in the broad definition of 'vessel.'" Dravo asserts that the only other cognizable cause of action by an injured longshoreman against his employer was articulated by the Supreme Court in *Reed v. S.S. YAKA*, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1933). This cause of action survived the 1972 amendments, but only to the extent of the holding in *Reed* that a longshoreman could bring a direct action predicated exclusively on a theory of negligence against his stevedore employer, if his stevedore employer was the owner or constructive owner of the vessel on which he was working. *See Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1351 (5th Cir.1980); *Bossard v. Port Allen Marine Serv., Inc.*, 624 F.2d 671, 672 (5th Cir.1980); *Smith v. M/V CAPTAIN FRED*, 546 F.2d 119, 123 (5th Cir.1977); *Napoli v. Hellenic Lines, Ltd.*, 536 F.2d 505, 506–507 (2d Cir.1976); *Griffith v. Wheeling Pittsburgh Steel Corp.*, 521 F.2d 31, 44 (3d Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976). Dravo correctly points to the fact that the *Terry* case was decided before the 1972 amendments to the LHWCA.

Our review of case law interpreting section 905(b) revealed scant authority to guide us in our analysis regarding St James' contribution claim. The Court of Appeals for the Fifth Circuit has opined that "[T]he *CAPTAIN FRED* doctrine [referring to *Smith v. M/V CAPTAIN FRED*, 546 F.2d 119 (5th Cir.1986)] ... permits a third-party action for contribution where the LHWCA employer is also a vessel owner and hence liable for a maritime tort under § 905(b). Where a tort action lies against the LHWCA employer as vessel owner, there is a basis for third-party contribution." *Ketchum v. Gulf Oil Corp.*, 798 F.2d 159, 161 n. 5 (5th Cir.1986). Though the Fifth Circuit stated that the fact pattern in the *Ketchum* case did not invoke the contribution holding, *id.*, we adopt the Fifth Circuit's conclusion that, under the LHWCA, if an employee prevails against his employer, who is also the vessel owner, a third party may bring a claim for contribution. In the present case, we hold that St. James may obtain contribution from Dravo if St. James succeeds on its *pro hac vice* theory of recovery.

St. James' Contract Claims

■ In its first point of error, St. James also asks this Court to find the trial court erred in directing a verdict against it on St. James' contract claims for breach of Dravo's contractual obligation to clean the barges. The record shows St. James entered into a Barging Agreement with Dravo's predecessor in interest, Radcliff Materials, to transport cargos of stone for Dravo and that the contract was adopted and ratified by Dravo. The contract states: "In order to minimize cleaning bills, Radcliff Materials will make every effort to clean all barges."

St. James asserts that Dravo cannot satisfy the directed verdict standard regarding St. James' contract claims, given that St. James presented ample evidence to establish Dravo's contractual obligation for cleaning the barges. We hold that the Barging Agreement constitutes sufficient probative evidence that Dravo incurred responsibility for cleaning the barge in question to defeat the directed verdict against St. James' on its cross-claim for breach of contract.

We sustain point of error one. Based on this holding, we decline to reach point of error two, which points to error in the trial court's overruling St. James' motion for new trial or for judgment notwithstanding the verdict.

St. James' Requests for Jury Instructions

In its remaining points of error, St James contends that the trial court compounded its error in directing a verdict by rejecting appellants' proffered jury instructions that discussed the scope of the vessel owner's duty to a longshoreman under section 905(b), the lack of liability of a principal for acts or omissions of an independent contractor, and the tax treatment of damages awarded in personal injury verdicts. The court's charge defined the terms "negligence," "ordinary care," and "proximate cause." Jury question number one states:

> Did the negligence, if any, of the parties named below proximately cause the occurrence in question?
>
> Answer "yes" or "no" for each of the following.
>
> a. St. James Transportation Company/Waterways Company #7, Ltd.
>
> ———
>
> b. James Porter
>
> ———

Question number one sets forth the following instruction:

> You may consider the following elements *and none other:*
>
> 1. Failure to keep the walkways in a safe condition;
>
> 2. Failure to adequately moor the barges;
>
> 3. Failure to furnish handrails/handholds;
>
> 4. Failure to keep a proper lookout.

(Emphasis added.)

Texas Rule of Civil Procedure 277 requires the court to "submit such instructions and definitions as shall be proper to enable the jury to render a verdict." In implementing this rule, trial courts have wide discretion. *See Mobil Chemical Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974). In submitting a case to the jury, a trial court should issue such explanatory instructions and definitions as will enable the jury, as the trier of fact, to render a verdict. The court must explain to the jury any legal or technical terms; however, the court is given wide discretion to determine the sufficiency of such expla-

nations. *K-Mart Corp. v. Trotti,* 677 S.W.2d 632, 636 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). For a trial court's failure to instruct the jury to amount to reversible error, the refusal to instruct must have caused or have been reasonably calculated to have caused, the rendition of an improper verdict. *See, e.g., Gulf Coast State Bank v. Emenhiser,* 562 S.W.2d 449, 453–54 (Tex.1978); *Steinberger v. Archer County,* 621 S.W.2d 838, 841 (Tex.App.—Fort Worth 1981, no writ).

Texas law regarding negligence liability requires the existence of a duty, breach of that duty, and an injury proximately resulting from that breach. *City of Gladewater v. Pike,* 727 S.W.2d 514, 517 (Tex.1987). The existence and scope of that duty presents a threshold question of law for the court. *See Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983). Accordingly, this Court will not require the trial court to instruct the jury on *Scindia* duties, as such instructions would would require the factfinder to determine issues that the trial court decides as a matter of law.

The trial court properly instructed the jury on the terms "negligence," "ordinary care," and "proximate cause." We hold that the trial court's failure to instruct the jury on the *Scindia* duties was not error. We overrule points of error three and four.

Liability for Acts or Omissions of Independent Contractor

Point of error five contends that the trial court erred in refusing the appellants' requested instruction regarding a principal's lack of liability for the acts or omissions of an independent contractor. Evidence adduced at trial showed Porter slipped as he stepped from barge WTT 8157 to barge WTT 8159. About one month before the accident, an independent towing company had positioned barge WTT 8159 next to WTT 8157.

The trial court refused St. James' tendered instruction, which stated: "A principal is not liable for the acts or omissions of an independent contractor." We hold that the trial court's refusal of this instruction was not error, in that the instruction does

not acknowledge that one who entrusts work to an independent contractor, but who retains the right to control any aspect of the contractor's work, remains subject to liability. *Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985). We overrule point of error five.

Federal Income Tax Consequences

 In point of error six, St. James maintains that the trial court erred in failing to instruct the jury that any damages awarded for future wages would not be subject to income taxation. Such an instruction would be improper as introducing a wholly collateral matter into the damages issue; therefore, we do not find that the trial court abused its discretion in refusing this instruction. We overrule point of error six. *See Turner v. General Motors Corp.,* 584 S.W.2d 844, 853 (Tex.1979) (op. on reh'g) (citing *Missouri–Kansas–Texas R.R. Co. v. McFerrin,* 291 S.W.2d 931, 945 (Tex.1956)).

### Conclusion

We reverse the judgment of the trial court to the extent it addresses contribution and indemnity of the parties and remand for a new trial in accordance with this opinion. We affirm the judgment in all other respects.