Hazel Virginia NEAL, etc., Plaintiff,

v.

McGINNIS, INC., Defendant.

Civ. A. No. 88–23.

United States District Court,
E.D. Kentucky,
at Covington.

July 25, 1989.

Steven Schletker, Covington, Ky., for plaintiff.

William P. Schroeder, Rendigs, Fry, Kiely & Dennis, Cincinnati, Ohio, for defendant.

## OPINION AND ORDER

BERTELSMAN, District Judge.

This is an action for wrongful death brought under the Jones Act, 46 U.S.C. App. § 688, and under the general maritime law of the United States. It is presently before the court on the defendant's motion for a pretrial ruling on the applicability of substantive federal admiralty law.

## FACTS

This action arose as the result of the death of seaman Joe Neal, who slipped, fell and drowned in the Ohio River during the course of his employment as a deckhand for G & C Towing Company, Inc. ("G & C Towing"). The accident occurred at the McGinnis, Inc. ("McGinnis") fleeting facility in Ludlow, Kentucky on February 14, 1986. The complaint alleges that Neal's death was caused by the negligence of defendant McGinnis and the unseaworthiness of its fleet.

Hazel Virginia Neal, administratrix for the estate of Joe Neal, filed suit against G & C Towing under the Jones Act, 46 U.S.C. App. § 688, and general maritime law. That case was settled. Mrs. Neal also filed suit against McGinnis on February 12, 1988. She has asserted a claim against

McGinnis under the general maritime and admiralty law of the United States, invoking the court's admiralty jurisdiction under 28 U.S.C. § 1333. Plaintiff also asserts that federal jurisdiction exists pursuant to 28 U.S.C. § 1332, diversity of citizenship.

On February 22, 1989, the court ordered the defendant to submit a motion for a pretrial ruling on the applicability of substantive admiralty law to the issues presented in the case. The court ordered that the defendant was to presume for purposes of its motion that the plaintiff intended to pursue her claims under the common law. Defendant filed its motion for a pretrial ruling on March 16, 1989.

The issue the court must decide in this matter is whether general substantive federal maritime law or state wrongful death law should be applied to a maritime wrongful death action brought under the court's diversity jurisdiction. Defendant argues that the court should apply substantive federal maritime law rather than the wrongful death law of Kentucky to this claim. It contends that even when a suit is brought under the court's diversity rather than admiralty jurisdiction, a federal court must apply not state substantive law but general federal maritime law.

Plaintiff argues that a federal court sitting in diversity must apply state law rather than general federal law. Citing *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), plaintiff contends that the court should apply Kentucky law to a maritime wrongful death claim. She argues that the "saving to suitors" clause of 28 U.S.C. § 1333 effectively adopted the wrongful death statutes of the various states in which the claims arose, and that because Kentucky courts treat maritime wrongful death claims differently than other maritime matters, the court should apply Kentucky law.

## ANALYSIS

■ The court concludes that defendant's arguments are correct and that the court must apply the substantive general federal maritime law to the issues of this case, even under its diversity jurisdiction.

The Judiciary Act of 1789 granted the federal district courts "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction." Act of September 24, 1789, ch. 20, § 9, 1 Stat. 76–77, revised by the Act of June 25, 1948, ch. 646, 62 Stat. 931, amended May 24, 1949, ch. 139, § 79, 63 Stat. 101. The Act also reserved to "suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." *Id.* In its present form, the law gives the district courts original jurisdiction, "exclusive of the courts of the State," of "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).

The purpose of the "saving to suitors" clause was to preserve for seaman both their federal and their common law remedies. 1 S. Friedell, *Benedict on Admiralty* § 122 (7th ed. 1988). The relation between state and federal jurisdiction in such cases has been explained thus:

"The saving to suitors of a common law remedy was not intended to inhibit the admiralty from taking cognizance of a case over which the common law courts had a concurrent jurisdiction. Conversely, in cases of concurrent jurisdiction in admiralty and common law, the jurisdiction of the common law courts is not taken away. The saving was for the benefit of suitors who sought to commence action. The provision gave the plaintiff and preserved for him the option to choose his forum if he sought a common law remedy."

*Id.* (footnotes omitted).

The result of the clause is that a plaintiff who has an *in personam* claim against his employer (as opposed to an *in rem* action against the vessel itself) may bring suit in an ordinary civil action at common law or in admiralty. *Pryor v. American President Lines*, 520 F.2d 974, 976 (4th Cir. 1975), *cert. denied*, 423 U.S. 1055, 96 S.Ct. 787, 46 L.Ed.2d 644 (1976); *Casey v. Palmer Johnson Inc.*, 506 F.Supp. 1361, 1364 (D.Wis.1981); 14 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure*

§ 3672 (1985) [hereinafter Wright & Miller]. The clause "preserves to the plaintiff all of the remedies available in a state court in personam action...." *Casey,* 506 F.Supp. at 1364.

■ Thus, a plaintiff with an admiralty or maritime claim has three alternatives: to bring an admiralty suit in federal court, invoking the court's exclusive admiralty jurisdiction under 28 U.S.C. § 1333; to bring a suit at law in state court under the "saving to suitors" clause; or to bring a maritime action on the law side of a federal district court. 14 Wright & Miller, *supra,* at § 3672. When a plaintiff invokes general federal admiralty jurisdiction, he need not allege either diversity of citizenship or a minimum amount in controversy. *Id. See The Planter,* 32 U.S. (7 Pet.) 324, 340, 8 L.Ed. 700 (1833) (diversity not required); *Moll v. Southern Charters, Inc.,* 81 F.R.D. 77, 79 (E.D.N.Y.1979); (same); *Frank B. Hall & Co., Inc. v. S.S. Seafreeze Atl.,* 423 F.Supp. 1205, 1207 (S.D.N.Y.1976) (neither diversity nor jurisdictional amount required); *Leonard v. Liberty Mutual Ins. Co.,* 165 F.Supp. 154, 157 (E.D.Pa.1958) (jurisdictional amount not required), *rev'd on other grounds,* 267 F.2d 421 (3d Cir. 1959). A plaintiff must, however, meet the requirements of diversity of citizenship and jurisdictional amount if he brings a suit on the civil side of a federal district court. *Pryor,* 520 F.2d at 976–77; *Poole v. Lykes Brothers S.S. Co.,* 273 F.2d 423 (5th Cir. 1960); *Stainless Steel & Metal Mfg. Corp. v. Sacal V.I., Inc.,* 452 F.Supp. 1073, 1076 (D.P.R.1978).

■ A plaintiff does not have the option, however, of bringing a maritime claim in federal court based on the court's federal question jurisdiction. The Supreme Court, in *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 359–80, 79 S.Ct. 468, 473–84, 3 L.Ed.2d 368 (1959), held that claims under the general maritime law do not support federal question jurisdiction under 28 U.S.C. § 1331.

■ The most important difference to a litigant when bringing an action in federal court between the court's admiralty and its diversity jurisdiction is that in an action at law, the plaintiff has a right to trial by jury, even when the case is maritime in nature. *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 360, 82 S.Ct. 780, 784, 7 L.Ed.2d 798 (1962); *Romero v. Bethlehem Steel Corp.,* 515 F.2d 1249, 1252 (5th Cir.1975). A plaintiff bringing a claim under the court's admiralty jurisdiction is not entitled to trial by jury. *Romero v. Bethlehem Steel Corp.,* 515 F.2d at 1252.

■ Regardless of whether a maritime claim is brought on the admiralty or the law side of a federal district court, the parties' rights and liabilities are controlled by federal principles of maritime law. *Chelentis v. Luckenbach Steamship Co., Inc.,* 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918). *See also* 1 S. Friedell, *Benedict on Admiralty* § 114 (7th ed. 1988). "The choice of an action 'at law' cannot serve to diminish the dimensions of the substantive rights accorded by [maritime] law." *Oroz v. American President Lines, Ltd.,* 259 F.2d 636, 638 (2d Cir.1958), *cert. denied,* 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 572 (1959). *See also* 1 M. Norris, *The Law of Maritime Personal Injuries 3d* § 125 (1975). The reasoning behind the rule was explained as follows:

> "[A] presumption underlying the constitutional grant of federal admiralty jurisdiction was the need to establish a uniform body of maritime law for the nation. For the same reason Congress was given legislative authority over that subject. A correlative doctrine has developed to the effect that state legislatures are without authority either to extend or to restrict federal admiralty jurisdiction.
>
> "In order to achieve the constitutional objective underlying the grant of admiralty jurisdiction, the power of state courts and state legislatures to create or destroy remedies that might be sought under the saving to suitors clause has been limited."

14 Wright & Miller, *supra,* at § 3672 (footnotes omitted).

In *Chelentis v. Luckenbach Steamship Co.,* 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed.

1171 (1918), the Supreme Court considered the issue of which substantive law to apply in an admiralty case. In *Chelentis,* a seaman instituted a negligence action under the saving to suitors clause against his employer. *Id.* at 379, 38 S.Ct. at 502. The Court noted that the plaintiff's injuries were maritime in nature because both his work and his employment contract were maritime. *Id.* at 382, 38 S.Ct. at 503. It concluded that because the seaman's injuries were maritime, the parties' rights and liabilities were "matter clearly within the [federal] admiralty jurisdiction." *Id.* The Court also held that no state had the authority under the saving to suitors clause to eradicate general maritime principles concerning the scope of recovery available to the plaintiff. *Id.* It stated:

> "Plainly, we think, under the saving clause a right sanctioned by the maritime law may be enforced through any appropriate remedy recognized at common law; but we find nothing therein which reveals an intention to give the complaining party an election to determine whether the defendant's liability shall be measured by common-law standards rather than those of the maritime law. Under the circumstances here presented, without regard to the court where he might ask relief, [plaintiff's] ... rights were those recognized by the law of the sea."

*Id.* at 384, 38 S.Ct. at 504. *See also Southern Pacific Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).

Similarly, in *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 628, 79 S.Ct. 406, 408, 3 L.Ed.2d 550 (1958), the Supreme Court held that when a plaintiff is injured aboard a ship upon navigable waters, a federal court must apply federal maritime principles rather than state law to the substantive issues of the case. In *Kermarec,* the plaintiff was a visiting seaman who was injured on board a vessel berthed at a pier in New York. *Id.* at 626, 79 S.Ct. at 407. The plaintiff brought suit in federal court, invoking the court's diversity jurisdiction. *Id.* at 627, 79 S.Ct. at 408. The district court applied the substantive law of New York, and the Court of Appeals affirmed. The Supreme Court reversed, concluding:

> "If this action had been brought in a state court, reference to admiralty law would have been necessary to determine the rights and liabilities of the parties. *Carlisle Packing Co. v. Sandanger,* 259 U.S. 255, 259 [42 S.Ct. 475, 476, 66 L.Ed. 927 (1922) ]. Where the plaintiff exercises the rights conferred by diversity of citizenship to choose a federal forum, the result is no different, even though he exercises the further right to a jury trial."

*Id.* 358 U.S. at 628, 79 S.Ct. at 408.

■ The effect of the Court's holding in *Chelentis* is that "in an action brought under the saving to suitors clause, whether in a state court or under the non-maritime jurisdiction of a federal district court, the federal principles of maritime law control the respective rights and liabilities of the parties." 14 Wright & Miller, *supra,* at § 3672 (footnotes omitted). This principle has long been recognized and applied by the federal courts. *See Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 409–11, 74 S.Ct. 202, 204–05, 98 L.Ed. 143 (1953); *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1320–21 (11th Cir.1989); *Byrd v. Byrd,* 657 F.2d 615, 617 (4th Cir.1981); *Powell v. Offshore Navigation, Inc.,* 644 F.2d 1063, 1065 (5th Cir.), *cert. denied,* 454 U.S. 972, 102 S.Ct. 521, 70 L.Ed.2d 391 (1981); *Continental Casualty Co. v. Canadian Universal Ins. Co.,* 605 F.2d 1340, 1344 (5th Cir.1979), *cert. denied,* 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980); *Hamburg–Amerika Linie v. Gulf Puerto Rico Lines, Inc.,* 579 F.2d 115, 117 (1st Cir.1978); *Armour v. Gradler,* 448 F.Supp. 741, 744 (W.D.Pa.1978); *Lemon v. Bank Lines, Ltd.,* 411 F.Supp. 677, 678–79 (S.D.Ga. 1976). Therefore, the same law which governs actions brought under the federal courts' admiralty jurisdiction also governs maritime claims brought in the common law state courts or on the law side of the federal courts through diversity jurisdiction. That law is general *federal* maritime law.

State law, however, may be applied in the absence of specific federal maritime law on point. *Byrd,* 657 F.2d at 617; *Powell,* 644 F.2d at 1065 n. 5. In *Powell,* the Fifth Circuit noted, "State law may of course supplement federal maritime law, as in the exercise of its police powers or in the provision of an additional maritime tort remedy; state law may not, however, conflict with federal maritime law, as it would be redefining the requirements or limits of a remedy available at admiralty." *Id.*

The court in *Powell* based its conclusion on the Supreme Court's decision in *Southern Pacific v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). In *Southern Pacific,* the Court held that "state statutes may not contravene an applicable act of Congress or affect the general maritime law beyond certain limits." *Id.* at 216, 37 S.Ct. at 529. It also stated, "[N]o ... legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." *Id. See also Askew v. American Waterways Operators, Inc.,* 411 U.S. 325, 337–39, 93 S.Ct. 1590, 1598–99, 36 L.Ed.2d 280 (1973); *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 373–74, 79 S.Ct. 468, 480–81, 3 L.Ed.2d 368 (1959); *Just v. Chambers,* 312 U.S. 383, 387–92, 61 S.Ct. 687, 690–93, 85 L.Ed. 903 (1941); *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel,* 459 F.Supp. 507, 524 (S.D.Fla.1978), *aff'd sub nom. State of Florida v. Treasure Salvors, Inc.,* 621 F.2d 1340 (5th Cir.1980), *aff'd in part, rev'd in part,* 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982). Thus, the court need only apply state law if there is no general federal maritime law on point.

The Supreme Court recognized a general maritime cause of action for wrongful death caused by negligence or unseaworthiness in *Moragne v. State Marine Lines,* 398 U.S. 375, 376, 90 S.Ct. 1772, 1775, 26 L.Ed.2d 339 (1970). In *Moragne,* the Court acknowledged the need for a uniform federal law in maritime wrongful death cases, stating, "Our recognition of a right to re-cover for wrongful death under general maritime law will assure uniform vindication of federal policies, removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts." *Id.* at 401, 90 S.Ct. at 1788. *See also Gillespie v. United States Steel Corp.,* 379 U.S. 148, 155, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

In this case, according to the Court's holding in *Moragne,* federal substantive maritime law provides a cause of action for wrongful death. There is no need, therefore, for the court to look to the wrongful death law of Kentucky to supplement the federal law. The holdings of the Supreme Court in *Chelentis, supra, Moragne, supra* and *Southern Pacific, supra,* make clear that the court must apply general federal admiralty law to maritime cases, even when the plaintiff brings suit on the law rather than admiralty side of the court.

If the plaintiff chooses to invoke the court's diversity jurisdiction, she will be entitled to a jury trial. The substantive law of the case, however, must be the general federal maritime law, whether she chooses to proceed at admiralty or at law. As the court in *Treasure Salvors, supra,* stated, "The entire subject of maritime law including its substantive as well as its procedural features is under federal control." 459 F.Supp. at 525. *See also Pope & Talbot, Inc.,* 346 U.S. at 409, 74 S.Ct. at 205.

Thus, the court holds that it will apply substantive federal admiralty law to the issues presented in this case regardless of whether the plaintiff pursues her action pursuant to the court's admiralty jurisdiction or its diversity jurisdiction.

Therefore, for the above reasons,

IT IS ORDERED that substantive admiralty law shall apply to the issues presented in this case whether plaintiff invokes this court's admiralty jurisdiction under 28 U.S.C. § 1333 or its diversity jurisdiction under 28 U.S.C. § 1332.