Virgil BECKER and Ruby Joleen Becker, Plaintiffs,

v.

CROUNSE CORPORATION, M/G Transport Services, and Mid–South Towing Company, Defendants and Third–Party Plaintiffs,

v.

Randall William BECKER, Third–Party Defendant.

No. C92–0157–P.

United States District Court, W.D. Kentucky, Paducah Division.

Jan. 7, 1993.

Robert O. Crego, Katzman & Crego, Belleville, IL, for plaintiffs.

Henry O. Whitlow, Whitlow, Roberts, Houston & Russell, Paducah, KY, for defendants.

W.J. Larzelere, Jr., Metairie, LA, for Crounse Corp.

Stephanie R. Miller, W. Scott Miller, Jr., Miller & Miller, Louisville, KY, for M/G Transport Services.

B.M. Westberry, Marion, KY, William C. Bateman, Memphis, TN, for Midsouth Towing Co.

Burke B. Terrell, Hardy, Terrell & Boswell, Paducah, KY, for Randall William Becker.

## MEMORANDUM OPINION

HEYBURN, District Judge.

The parties dispute this Court's jurisdiction and propose differing sources of applicable law in this admiralty case arising from a boating accident on the Ohio River. The motions submitted for decision require this Court to determine whether it possesses subject matter jurisdiction; whether it must apply federal or state law; and whether Defendants may pursue a cross-claim demanding contribution from a party who has settled his liability to Plaintiffs.

Plaintiff Virgil Becker was a passenger in a fishing boat sailing on the Ohio River between Kentucky and Illinois, near Smithland Pool, on June 25, 1989. Plaintiff's son, Third–Party Defendant Randall Becker, piloted the vessel that day. A large wave allegedly struck the boat and capsized it, injuring Plaintiff and destroying the vessel. Plaintiffs allege that the negligent operation of three nearby commercial barges combined to create the damaging surge of water. Plaintiff and his wife, Plaintiff Ruby Joleen Becker, who alleges loss of consortium resulting from the accident, settled their claims against Randall Becker for $45,000.00 in March, 1990. Plaintiffs, who are Illinois residents, filed suit in the courts of Kentucky on June 22, 1992. They named as Defendants the owners of the three barges: Crounse Corporation, a Kentucky enterprise, operator of the vessel *Zelda Humphrey;* M/G Transport Services, an Ohio corporation, operator of the *Michael Conaton;* and Midsouth Towing, a Florida concern, operator of the *Anne B.* Defendants removed the litigation to this Court soon thereafter. They also asserted cross-claims against Randall Becker, demanding contribution from him in the event Defendants are held liable for the injuries sustained by Plaintiffs.

I.

### *Federal Admiralty Law Governs*

All the parties to this litigation stand in fundamental disagreement regarding the source of this Court's jurisdiction over their suit. They consequently part company with respect to which set of laws should govern Plaintiffs' cause of action. One side urges the Court to hold that the litigation presents a federal question, and should be governed by federal law; another contends that the case is a diversity action, subject to Kentucky law; the last in turn proposes that the federal law of admiralty provides both jurisdiction and the substantive legal principles to be applied.

A claim is cognizable in admiralty if: (1) the alleged wrong occurs on navigable waters, and (2) the wrong bears a significant relationship to traditional maritime activity. *Foremost Ins. v. Richardson,* 457 U.S. 668, 672–73, 102 S.Ct. 2654, 2657–58, 73 L.Ed.2d 300 (1982). The Ohio River is indisputably a navigable waterway for the purpose of conferring admiralty jurisdiction. *See Finneseth v. Carter,* 712 F.2d 1041, 1044 (6th Cir. 1983). The potential disruptive impact of a collision between vessels operating on the Ohio, and the importance of maintaining uniform rules of conduct on that crucial waterway, satisfy admiralty law's additional requirement that the accident bear a sufficient nexus to traditional maritime activity. *Foremost,* 457 U.S. at 675, 102 U.S. at 2758.

Admiralty jurisdiction embraces a class of litigation "entirely separate and distinct" from those cases commonly described as presenting a "federal question." *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 367, 79 S.Ct. 468, 477, 3 L.Ed.2d 368 (1959). Thus the federal courts' jurisdiction over "cases ... arising under this Constitution" does *not* include admiralty lawsuits; the Constitution entrusts admiralty litigation to the federal courts under a sepa-

rate grant of jurisdiction, subject to independent jurisdictional limits. *Id.* at 365, 79 S.Ct. at 476. Federal law defines this Court's admiralty jurisdiction as comprising "any civil case of admiralty or maritime jurisdiction, saving to suitors ... all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). One of those "remedies" preserved for plaintiffs by that jurisdictional statute is the option of pursuing maritime claims in the state courts. *Offshore Logistics v. Tallentire,* 477 U.S. 207, 222–23, 106 S.Ct. 2485, 2494–95 (1986); *Romero,* 358 U.S. at 371, 79 S.Ct. at 479. Regardless of the forum chosen, however, federal admiralty law—not the law of the State in which the event occurred—governs the controversy. *Tallentire,* 477 U.S. at 222–23, 106 S.Ct. at 2494–95; *East River S.S. Co. v. Transamerica Delaval,* 476 U.S. 858, 864–65, 106 S.Ct. 2295, 2298–99, 90 L.Ed.2d 865 (1986); *Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 73 (6th Cir.1990).

## II.

### *District Court May Exercise Jurisdiction*

■ Plaintiffs in this action appropriately initiated their suit in state court. That choice, though it does not affect the law to be applied in determining the parties' rights and liabilities, does import two significant considerations. First, a plaintiff who elects to proceed in state court may exercise a right to a jury trial, a right not necessarily offered to a plaintiff who chooses to initiate an admiralty suit in federal court. *T.N.T. Marine Service v. Weaver Shipyards,* 702 F.2d 585, 586–87 (5th Cir.1983); *see also In re Complaint of Midland Enterprises,* 886 F.2d 812, 814 (6th Cir.1989).[1] And second, an admiralty suit, once begun in state court, cannot be removed except on the basis of diversity of citizenship.

1. That right remains with the plaintiff if the action is later removed to federal court. *See, e.g., Alleman v. Bunge Corp.,* 756 F.2d 344, 345 (5th Cir.1984) (defendant cannot destroy plaintiff's "right to prosecute their action in a common law court" by removal).

2. The Court highly recommends Judge Bertelsman's lucid opinion in *Neal v. McGinnis, Inc.,* 716 F.Supp. 996, 998 (E.D.Ky.1989) for its de-

*Romero,* 358 U.S. at 363, 371–72, 79 S.Ct. at 475, 479–80. This limitation stems from the fact that suits in admiralty are not removable as "federal questions" under 28 U.S.C. § 1441(b), and from the absence of any removal statute specifically addressing admiralty cases.[2]

■ Defendants therefore may remove Plaintiffs' cause of action to this Court only if the claim seeks damages in excess of $50,-000.00 and arises between citizens of different states. 28 U.S.C. §§ 1332(a)(1) and 1441(a). Diversity of citizenship plainly appears with respect to Plaintiffs and Defendants. Nor does the fact that Third Party Defendant Randall Becker shares the same state of residence as Plaintiffs destroy diversity. *Coleman v. Casey County Bd. of Educ.,* 686 F.2d 428, 430 (6th Cir.1982); *Morrissey v. Omark Indus.,* 614 F.Supp. 99, 103 (S.D.Oh.1985). This is because a federal court, when it has proper jurisdiction over the main action, may adjudicate third-party claims which arise out of the subject matter of that main action, even if the third-party claim lacks its own independent basis for jurisdiction. *Coleman,* 686 F.2d at 430.

■ Though Plaintiffs' Complaint did not claim damages in a specific amount, it cannot be said to a legal certainty that Plaintiffs will be unable to recover a sum in excess of the requisite diversity amount. Dismissal under such circumstances would be improper. *Saint Paul Mercury Indem. v. Red Cab,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).[3] This Court therefore may exercise jurisdiction over Plaintiffs' claims, and must apply federal law to resolve all questions attending the litigation.

scription of the different sources of federal admiralty jurisdiction.

3. Plaintiffs later sought to amend their Complaint to include an explicit contention that their damages exceeded $50,000.00. This attempt was of no consequence; plaintiffs may not confer or extinguish diversity jurisdiction after removal by amending their complaints to assert a different sum of damages. *Saint Paul Mercury,* 303 U.S. at 292, 58 S.Ct. at 592.

### III.

*Federal Statute of Limitations Applies*

 Virgil Becker embarked on his ill-fated river voyage on June 25, 1989. The Beckers filed the present lawsuit in Kentucky court on June 22, 1992, almost three years after the boating accident. Defendants and Randall Becker point to this intervening delay and contend that Plaintiffs' lawsuit is untimely and must be dismissed. They base their Motions to dismiss on Kentucky's one year statute of limitations governing actions to redress personal injury.

But the foregoing discussion leaves little doubt that the federal statute of limitations will determine whether the Beckers' claim is timely. *Dempsey v. Norwegian Cruise Line,* 972 F.2d 998, 999 (9th Cir.1992); *Burden v. Evansville Materials,* 550 F.Supp. 41, 43–44 (W.D.Ky.1982). That federal statute would apply even if the case had remained in Kentucky's courts. *Tallentire,* 477 U.S. at 223, 233, 106 S.Ct. at 2494–2500.

Federal law permits plaintiffs to recover damages "for personal injury . . . arising out of a maritime tort" if they commence litigation "within three years from the date the cause of action accrued." 46 U.S.C.App. § 763a. Plaintiffs filed suit within the limitations period. *Dempsey,* 972 F.2d at 999.

### IV.

*Status of Claims As to Settling Defendants*

The final issue which the Court must consider is whether Defendants may pursue their claims against a settling third-party defendant. Regardless of the answer, the Court must fashion a fair process for apportioning fault and damages in this case.

 Plaintiffs settled their claims against Randall Becker for $45,000.00 in March, 1990 and released him from any further liability for their injuries. (Answer of Randall Becker, Ex.A.) Randall Becker now offers this settlement as grounds for judgment on the pleadings against Defendants' Third Party Complaint, which seeks contribution from Becker to defray any damages they may be required to pay Plaintiffs. Randall Becker contends that admiralty law discharges a settling joint tortfeasor from liability for contribution to other wrongdoers, and that Defendants cannot collect reimbursement from him under any circumstances.[4]

Prevailing admiralty law offers no uniform doctrine which disposes of the controversy presented here. The Supreme Court has not yet addressed the liability of settling tortfeasors for contribution to their non-settling cohorts; the Sixth Circuit has taken no clear stance in the area; and the other Circuits are divided. One court which surveyed the conflicting pronouncements in this field was moved to "sympathize with the district court's difficulties in finding guidance from controlling authority on the settlement bar issue. There is none." *Miller v. Christopher,* 887 F.2d 902, 903 (9th Cir.1989). There are, nevertheless, certain long-established admiralty principles which provide direction in evaluating the options available, and there is no lack of advice from the Circuit Courts regarding possible solutions to the issue at hand.

### A.

*Policy of Full Compensation for Victims*

 Maritime tort law seeks first to assure full compensation to victims for their injuries. That policy dictates the general imposition of joint and several liability upon multiple wrongdoers whose negligence precipitates an accident. As the Supreme Court

---

**4.** Motions for judgment on the pleadings are governed by Fed.R.Civ.P. 12(c). Rule 12(c) motions may assert, among other matters, the defense of failure to state a claim upon which relief may be granted. *Amersbach v. City of Cleveland,* 598 F.2d 1033, 1038 (6th Cir.1979). In evaluating such a motion, this Court must regard as true the factual allegations made in Defendants' Third Party Complaint, and may not dismiss the Complaint unless it "appears beyond doubt" that Defendants can "prove no set of facts in support of [their] claim which would entitle [them] to relief." *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983). The "pleadings" upon which the Court must base its opinion include written instruments, like the settlement agreement at issue here, which are incorporated into a party's Answer. Fed.R.Civ.P. 10(c); *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir. 1991).

has commented, this maritime doctrine "is in accord with the common law, which allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, even if the concurrent negligence of others contributed to the incident." *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260, 99 S.Ct. 2753, 2756, 61 L.Ed.2d 521 (1979). The Court acknowledged the possible inequity threatened by a doctrine which allows a plaintiff to demand that a less-culpable wrongdoer bear a disproportionate share of the plaintiff's damages. *Edmonds* at 270, 271 (fn. 30), 99 S.Ct. at 2761, 2762 (fn. 30). Nevertheless, the Court insisted that such consequences would "not justify allocating more of the loss to the innocent [victim]" by limiting that victim's recovery to an amount based on the individual wrongdoer's relative share of fault. *Id.* There can be little doubt that, as between the plaintiff and several wrongdoers, the plaintiff should be able to insist upon a full recovery from any tortfeasor, regardless of that tortfeasor's comparative liability.

### B.

#### *Policy of Comparative Liability Among Joint Wrongdoers*

The harsh consequences of a joint and several liability system are tempered, though, by the centuries-old admiralty principles of comparative liability and contribution. Maritime law rejected long ago the common law rules against contribution, and adopted instead a "doctrine of ancient lineage provid[ing] that ... mutual wrongdoers shall share equally the damages sustained by each...." *Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 110, 94 S.Ct. 2174, 2176, 40 L.Ed.2d 694 (1974). The admiralty

courts recognized that "a 'more equal distribution of justice' can best be achieved by ameliorating the common-law rule against contribution which permits a plaintiff to force one of two wrongdoers to bear the entire loss, though the other may have been equally or more to blame." *Cooper* at 111, 94 S.Ct. at 2177. In recent years the Supreme Court further refined these rules by declaring that the liability of joint tortfeasors for maritime injury "is to be allocated among the parties proportionately to the comparative degree of their fault...." *United States v. Reliable Transfer*, 421 U.S. 397, 411, 95 S.Ct. 1708, 1715, 44 L.Ed.2d 251 (1975). In this manner, "contribution remedies the unjust enrichment of the concurrent tortfeasor" who temporarily escapes responsibility for damages under the joint and several liability system. *Edmonds*, 443 U.S. at 271 (fn. 30), 99 S.Ct. at 2762 (fn. 30). Though the plaintiff may choose to collect damages from a single wrongdoer, it is clear that joint wrongdoers may assure a more equitable division of liability among themselves by allocating their comparative fault and pursuing contribution remedies. *See also Phillips Petroleum v. Stokes Oil*, 863 F.2d 1250, 1255 (6th Cir.1988) (applying comparative fault doctrine and approving proportionate contribution between defendants).[5]

When applied in a litigation context, the doctrines of joint and several liability and comparative contribution ably serve the admiralty policies of protection for victims and fairness between defendants. All the defendants are present to dispute their liability under such circumstances, and all are prepared to bear the consequences of an adverse verdict. Each defendant is fully conscious of the possibility that he or she may be held to pay the full amount of the plaintiff's damages, and presumably has chosen this expo-

---

**5.** A brief example will serve to demonstrate the application of these principles. Assume that Plaintiff "A" sues joint tortfeasors "Y" and "Z" for injuries caused by the defendants' concurrent negligence. The lawsuit will determine, among other issues, A's total damages (assume, for this example, $10,000) and the comparative shares of fault assigned to Y (25%) and Z (75%). The plaintiff, by prevailing, may collect the full amount of damages from Y under the joint and several liability principle of *Edmonds*. Defen-

dant Y may then exercise his right of proportionate contribution guaranteed by *Cooper* and *Reliable Transfer* and sue Defendant Z for $7500 (75% of the total damages). Thus though Defendant Y initially must compensate the plaintiff for all injury suffered, the right of comparative contribution assures that Y ultimately will be out of pocket only $2500, an amount representing Y's proportionate share of the plaintiff's damages. Note, though, that the risk of Z's insolvency rests on Defendant Y, rather than upon the plaintiff.

sure based upon the defendant's anticipation of a favorable verdict. But these doctrines of joint and several liability and contribution may yield uncertain results when one joint tortfeasor chooses to settle with the plaintiff before litigation, leaving the other wrongdoer to proceed to trial alone.

## C.

### Circuit Court Attempts to Reconcile Competing Policies

Courts have struggled with the problems created by these twin principles of admiralty recovery. Admiralty's comparative contribution principle leaves the settling defendant exposed to additional liability even after settlement, since that defendant may be required to share the damages paid by the non-settling joint tortfeasor after the latter's unsuccessful trial. Such continued exposure undermines one of the principal benefits sought through settlement. Contribution liability also permits the plaintiff effectively to collect, by a circuitous route, more money from the settling defendant than the plaintiff had agreed to take originally. Contribution from settling defendants would therefore seem to contradict "the interest the courts have in encouraging settlements" in admiralty cases. *Tankrederiet Gefion v. Hyman–Michaels Co.*, 406 F.2d 1039, 1043 (6th Cir. 1969). These considerations moved the Eighth Circuit to adopt a "proportional fault" system which excuses the settling defendant from contribution liability and holds the non-settling defendant liable only for damages representing that defendant's comparative share of fault. *Associated Elec. Coop. v. Mid–America Transp. Co.*, 931 F.2d 1266, 1271 (8th Cir.1990).[6] The Eighth Circuit's approach retains admiralty law's comparative

liability principle, but allocates the defendants' shares of fault at the trial stage rather than during the traditional post-trial contribution action. Advancing the allocation procedure allows the court to calculate the defendants' liability to the plaintiff in the form of a percentage share of the plaintiff's total damages. Since the non-settling defendant will pay no more than his or her individual portion of the plaintiff's recovery, that defendant will have no need to demand additional funds from the settling defendant through the comparative contribution process. Adoption of proportional liability as between the defendants and the plaintiff necessarily prevents the application of joint and several liability, since that doctrine presupposes the right of a plaintiff to demand damages from one wrongdoer in excess of that wrongdoer's relative fault. The Eighth Circuit proposed its reform in the belief that its new system would "not discourage defendants from settling by subjecting them to the risk of contribution suits from non-settling defendants", and would deter "collusive settlements by limiting the plaintiff's recovery against non-settling defendants to a sum accurately reflecting such defendants' negligence." *Assoc'd Elec.* at 1271.[7]

The Eighth Circuit's proportional fault system is notable for its adaptation of admiralty's policy of assuring fairness between defendants to the somewhat novel context of settling and non-settling joint tortfeasors. A non-settling defendant may be ordered to pay no more than its comparative share of the plaintiff's damages—which, indeed, is the maximum any defendant should pay after the combined application of joint and several liability and comparative contribution. A plaintiff "loses" only if the plaintiff accepts from the settling defendant an amount which is

---

**6.** The proportional fault approach has also been described as a "claim reduction" system, *see In re Amoco Cadiz*, 954 F.2d 1279, 1315 (7th Cir. 1991), and as the "settlement bar" rule, *see Great Lakes Dredge & Dock v. Tanker Robt. Watt Miller*, 957 F.2d 1575, 1581 (11th Cir.1992).

**7.** The Eighth Circuit rejected a modified approach, which it called a "contribution bar" system. That approach would require the non-settling defendant to pay the plaintiff's full damages, less a *pro tanto* credit for any amount paid

by the settling defendant. The non-settling defendant, however, could have no contribution from the settling defendant to align the amounts paid with the defendants' comparative fault. *Assoc'd Elec.*, 931 F.2d at 1271. This Court agrees with the Eighth Circuit's reasoning. A "contribution bar" approach would amplify the harshest aspect of joint and several liability (solitary responsibility for the plaintiff's damages, regardless of comparative fault) while eliminating admiralty law's ameliorative doctrine of comparative contribution.

less than that defendant's actual share of the plaintiff's damages. Yet even this result need not inevitably be considered "unfair": the plaintiff accepted a fixed sum in exchange for foregoing the chance of a more favorable outcome at trial, and the balancing of risks undertaken by the plaintiff likely produced an equitable settlement, if not an actuarially precise result. *Cf. Great Lakes,* 957 F.2d at 1582. And it seems likely that the risk of improvident settlements will be balanced, over time, by the occasional receipt of an overly-generous settlement in which the settling defendant pays more than would have been ordered at trial. *Assoc'd Elec.,* 931 F.2d at 1271.[8]

Despite the merits of the Eighth Circuit's approach, the recent trend among those Circuit Courts which have addressed the issue has been to reject the proportional fault system. *See, e.g., In re Amoco Cadiz,* 954 F.2d 1279 (7th Cir.1992) *and Great Lakes Dredge & Dock v. Tanker Robt. Watt Miller,* 957 F.2d 1575 (11th Cir.1992). The Seventh Circuit contended that the proportional fault approach "in particular is no panacea", since the necessity of determining each wrongdoer's precise share of liability "creates a substantial possibility of extended collateral litigation." *Amoco Cadiz,* 954 F.2d at 1318. This additional litigation is complicated by the absence of the settling defendant who, under the proportional fault system, cannot be held liable for contribution and therefore has no incentive to participate in the trial. *Id.*[9] Plaintiffs additionally may decide to settle for a particular amount, not because that amount accurately reflects the settling

defendant's share of fault, but because that amount represents the maximum which a near-insolvent opponent can afford to pay. *Id.* The elimination of joint and several liability under such circumstances, as required by the proportional fault system, would prevent the plaintiff from recovering an amount sufficient to make the plaintiff whole. "[W]hy should the judicial system invest so heavily in adjusting accounts among wrongdoers?" asked the *Amoco* court: "Neither justification for the tort system—compensation of victims and the creation of incentives to take care—would be served" by the proportional fault approach. *Id.*

The proportional fault system's abolition of joint and several liability may constitute its most significant flaw. The Supreme Court in *Edmonds* pointedly rejected the application of proportional fault and reaffirmed admiralty law's long standing commitment to the joint and several liability principle. *Edmonds,* 443 U.S. at 268–69, 99 S.Ct. at 2760–61. The Court in *Edmonds* examined the plight of a longshoreman injured by the concurrent negligence of his employer and a shipowner. *Edmonds,* 443 U.S. at 258, 99 S.Ct. at 2755. The plaintiff collected workers compensation benefits from his employer, the payment of which excused the employer from any further liability. *Id.* at 261, 99 S.Ct. at 2756. The longshoreman ultimately collected 90% of his total damages from the shipowner, even though that defendant accounted for only 20% of the negligence resulting in the plaintiff's injury. *Id.* at 258, 99 S.Ct. at 2755.[10] The shipowner urged the Court to

8. To illustrate the Eighth Circuit's proportional fault system, assume that Plaintiff "A" settles with joint tortfeasor "Z" for $5000. Co-defendant "Y" elects to proceed to trial, where A's total damages are determined to be $10,000 and the comparative shares of fault to be 25% for Y and 75% for Z. The plaintiff may collect 25% of his damages ($2500) from Defendant Y. Defendant Y would have no occasion to demand proportionate contribution from Defendant Z, since Y paid no more than his comparative share of the plaintiff's damages. Note that the plaintiff here "lost," collecting $7500 rather than the full $10,-000 to which the plaintiff was entitled, but this loss stemmed from the settlement with Z, not from an insufficient payment by Y.

9. Note that this ancillary litigation is not offset by the elimination of a trial on the merits of the

plaintiff's claim, which ordinarily represents a significant benefit of settlement. An agreement between a single wrongdoer and the victim will make a trial unnecessary, thereby serving society's interest in judicial economy. But where joint tortfeasors are present, a settlement by one will not prevent a trial against the other. Encouragement and protection of settlements in this context seems a less-compelling consideration than it would be under ordinary circumstances.

10. The statutes at issue in *Edmonds* had further erected a "contribution bar" which prevented the shipowner from obtaining any reimbursement from the 70%–negligent employer to defray the ship owner's disproportionate liability. *Edmonds,* 443 U.S. at 261, 99 S.Ct. at 2756.

prevent the imposition of this unfair burden by adopting a proportional fault system.

The Court acknowledged "the sound arguments supporting division of damages between parties before the court on the basis of their comparative fault." *Id.* at 271, 99 S.Ct. at 2762. But the Court concluded that the elimination of joint and several liability could create its own inequities by reducing a plaintiff's total recovery and thereby shifting the burden of loss to the victim. *Id.* at 268–69, 99 S.Ct. at 2760–61. The Supreme Court's ringing endorsement of the application of joint and several liability cannot easily be brushed aside; indeed, several courts have declared themselves unable to rebut the reasoning employed in the *Edmonds* case. *Amoco,* 954 F.2d at 1316; *Great Lakes,* 957 F.2d at 1580.

The courts readily acknowledge, though, that *Edmonds* does not preclude the adoption of a proportionate fault system in a context not involving the application of workers compensation. *See, e.g., Great Lakes,* 957 F.2d at 1580 (fn. 4). The Eighth Circuit insisted that the *Edmonds* rule should not govern litigation in which one party has avoided liability by settlement rather than by the payment of statutorily required benefits. *Assoc'd Elec.,* 931 F.2d at 1270–71. The Supreme Court itself suggested a single distinction between a plaintiff who has settled and a plaintiff who has received workers compensation when the Court acknowledged that "[g]enerally, workers' compensation benefits are not intended to compensate for an employee's entire losses." *Edmonds,* 443 U.S. at 261 (fn. 9), 99 S.Ct. at 2756 (fn. 9). Under ordinary circumstances, a settlement payment clearly *is* intended to compensate the plaintiff for all losses attributable to the settling party's negligence. The need for joint and several liability, with its attendant possibility of a disproportionate recovery, seems less urgent when a plaintiff has already received a payment calculated to reimburse an appropriate share of the plaintiff's total losses.

D.

*This Court's Hybrid Approach*

 Consequently, this Court is confronted with much advice and little guidance on the matter at issue in this case. The traditions and teachings of admiralty law seek to promote the following interests in order of preference:

(1) Full recovery by Plaintiffs;

(2) Fairness among Defendants of varying culpability; and

(3) Settlement of cases.

 The Court believes that a "hybrid" approach which draws upon the best elements of traditional admiralty doctrines and the evolving standards of comparative negligence best crafts an equitable remedy for all concerned. The principles of this "hybrid" approach are as follows:

(1) The Court would apply the principle of joint and several liability in all cases in which no defendant settled.

(2) Fault would be apportioned among the defendants to achieve fairness among the defendants. The plaintiff would continue to be entitled to collect judgment *in toto* from any defendant which is adjudged at fault. The paying defendant could then exercise its right of proportionate contribution.

(3) If a plaintiff chooses to settle with one or more defendants, that plaintiff does so with the knowledge that the settling defendants' proportionate share of the award, as determined by the jury, will be excluded from the judgment.

(4) However, even in the case where a plaintiff has settled with one or more defendants, the plaintiff would still obtain a joint and several judgment against any and all remaining defendants for that amount which remains after the settling defendants' share of the award is excluded. The non-settling defendants retain their right of proportionate contribution, which they may exercise only against other non-settling defendants.

By this "hybrid" method, the interests of all important parties are protected and promoted. Plaintiff may preserve joint and several liability against all Defendants by simply not settling. And, if a partial settlement is advantageous, even that settlement does not extinguish Plaintiff's joint and several rights

**396**

against the remaining Defendants. At the same time, Defendants would have some incentive to settle, because by settlement they may gain complete peace and protection against continued litigation with co-defendants.

Certainly, a plaintiff could be harmed by a wrong judgment about settlement. But that is always possible. However, the "hybrid method" assures that plaintiff will not be hurt by an unfair operation of law, but only by bad judgment in settling. Finally, the "hybrid method" is consistent with the traditional mandates and preferences of admiralty law as set forth in *Edmonds* and *Cooper* and the method recognizes the best and most tested principles of comparative negligence which have evolved in recent years.

For the reasons stated above, the Court is entering an Order herewith sustaining the Third–Party Defendant's Motion to Dismiss.